Hardin's adm'r v. Taylor.

Case 122—PETITION EQUITY—October 12.

# Hardin's adm'r v. Taylor.

APPEAL FROM SIMPSON CIRCUIT COURT.

1. Subject to certain exceptions contained in subsection 2, section 606 of the Civil Code, a party cannot testify for himself concerning a transaction with one who is dead; nor will his deposition as to such transaction be admissible if the other party be dead at the time of trial, although living at the time the deposition was taken, unless before his death he also testified in the action. And the fact that the representative of the decedent has testified confers no right upon the adverse party to testify, save as to those things to which the testimony of the representative related. (Subsec. 2, sec. 606, Civil Code.)

2. To authorize the cancelment of a contract of settlement made between a ward and his former guardian, there must be evidence of bad faith on the part of the latter. In this case a payment to the ward in bonds, which afterward became worthless, is held to be binding upon him, although made upon the day he reached his majority, there being no evidence that the guardian acted in bad faith.

VOL. LXXVIII.—38

Hardin's adm'r v. Taylor.

3. Five years is an unreasonable delay on the part of a ward in making known his objection to a settlement had with his former guardian, and the sureties in the guardian's bond are thereby released.

J. M. GALLOWAY FOR APPELLANT.

1. The proof tends to show the utmost good faith on the part of the guardian, and it is only where this is wanting that a ward can repudiate a settlement had with his former guardian.

2. The appellee, by his failure to return the bonds within a reasonable time after discovery of the alleged fraud, has forfeited his right to relief. (Waters v. Mattingly, 1 Bibb, 244; Robinson v. Gibbreth, &c., 4 Bibb, 183; Davis v. James' ex'rs, 4 J. J. Mar., 9; Sewart v. Daughnerty, 3 Dana, 480; Hoggins v. Becroft, &c., 1 Dana, 30; Buford v. Brown, &c., 6 B. Mon., 553; Cobb v. Hatfield et al., 46 N. Y., 533; Henry v. Root, 33 N. Y., 526; Bryant, &c., v. Pottinger, 6 Bush, 473; Petty v. Roberts, 7 Bush, 410; 2 Kent, 246.)

C. U. McELROY FOR APPELLANT.

1. The testimony of appellee was incompetent, the adverse party being dead at the time of trial.

2. Bad faith or imposition must be shown before a transaction between guardian and ward can be annulled.

3. The surety in the guardian's bond is released by the unreasonable delay of the ward.

A. DUVALL FOR APPELLANT.

1. This is not a suit to surcharge the settlement, but to rescind the contract.

2. Exceptions to appellee's deposition should have been sustained. (Subsection 2, sec. 606, Civil Code.)

3. The proof shows that the guardian acted in good faith.

4. An election to vacate a contract for fraud must be made in reasonable time.

R. RODES FOR APPELLEE.

1. Appellee's deposition was competent, because the adverse party was alive and present when it was taken, and also because his heir testified in the case. (Subsec. 2, sec. 606, Civil Code.)

2. Transactions between guardian and ward, soon after the latter has arrived at age, should be closely scrutinized. (Richardson v. Sweeney, 7 B. M., 573; 1 Perry on Trusts, sec. 200; 11 Law Reg. U. S., 642.)

3. The investment by the guardian of his ward's money in county bonds was made at his own risk. (2 Law Reg. O. S., 447; 3 Met., 353; 2 Dana, 252; 7 J. J. Mar., 238.)

4. Appellee's action is not barred by limitation.

5. The guardian acted in bad faith.

BUSH & PORTER FOR APPELLEE.

1. The guardian had no right, even with the consent of his ward, to invest the money of the latter in county bonds. (7 J. J. Mar., 238.)
2. The receipt of the ward is not conclusive. (Clay v. Clay, 3 Met., 554.)
3. Contracts between guardian and ward, soon after the ward arrives at age, are to be regarded with suspicion. (7 B. Mon., 573; Commonwealth for &c. v. Coleman *et al.*, MS. Op., June 4, 1873.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

It is assigned for error that the court overruled exceptions to the deposition of appellee.

The petition was filed on the 10th day of December, 1877, and the answer of the decedent, H. R. Hardin, on March 5th, 1878. On April 3d, 1878, appellee gave his deposition, and on the 13th of April of that year H. R. Hardin died. The pleadings were not made up until the August term, 1878.

Subsection 2 of section 606 of the Civil Code provides, that "no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, one who is dead, when the testimony is offered to be given, except for the purpose and to the extent of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place or when such act was done or omitted, unless—

"(c) The decedent, or representative of, or some one interested in his estate, shall have testified against such person with reference thereto."

It is insisted by counsel for appellee that under these provisions of the Code the ruling of the court in admitting this evidence is sustainable upon either one of two grounds: *First.* That the adverse party with whom the transaction was had was living at the time the deposition was taken.

*Second.* That the representative of the decedent testified against appellee.

When it is considered that these provisions of the Code apply to oral testimony as well as to evidence in the more permanent form of depositions, and when it is considered that the evident design of this section of the Code was to place the parties to an action, or those interested therein, on equal footing when their rights are being passed upon by the court, it seems clear that the expression, "*when the testimony is offered to be given,*" has reference to the time when the evidence is tendered to the court or jury on the trial of the action, and not to the time when the deposition is taken.    If that is not the construction, and the one insisted upon by counsel for appellee be adopted, we are compelled to give the words, "*offered to be given,*" one meaning when the evidence is by deposition, and another when it is oral, for there is no time at which oral evidence can be said to be offered until the witness is brought face to face with the court or jury on the trial of the case.    But it may be said that the decedent had an opportunity to give his deposition, and that this is all that is contemplated by the Code.    That may or may not be true, but if he had such opportunity it is a sufficient answer that it is his privilege to give his deposition at any time, before trial, that might best suit his convenience.    His right to testify by deposition extends over the whole of the time intervening between the filing of his answer and the trial term of the court, and he cannot be said to be in default at any particular period of this intervening time.    That consideration, however, does not influence our decision that the evidence is incompetent, for we think that, independent of that reflection, the clear meaning of the section quoted is, that the

evidence cannot be considered if the adverse party or person interested be dead at the time of trial. The time of his death, or whether he had an opportunity to testify, is immaterial.

Was the evidence admissible under subdivision (c) of subsection 2 of section 606? The representative and sole devisee of the decedent testified in regard to certain matters, but not in reference to all the matters of which appellee speaks in his deposition. For instance, appellee undertakes to detail a conversation between his guardian and himself at the time he signed the receipt for the amount found to be due him on settlement, when no one else was present. Of what was then said and done the representative of the decedent does not pretend to speak. This subdivision only authorizes the party to testify against the adverse party, who is dead, when the representative or one interested has testified in reference to any verbal statement of, or transaction with, the decedent, and then only as to such matters as the representative or person interested has testified with reference to.

The court erred in overruling exceptions to the deposition of appellee, but even if the case is considered upon its merits, and with the deposition in, we are of the opinion that the judgment should be reversed.

The facts are: H. R. Hardin, as guardian for appellee, made settlement with the county court and fell in debt to appellee in the sum of $3,350. On the 24th day of December, 1872, the settlement having been completed, and appellee being on that day twenty-one years of age, H. R. Hardin sought his ward, who was not present at the settlement, paid him the amount found to be due in Cass county, Missouri, bonds, Muhlenburg county, Kentucky, bonds, and one

Johnson county, Missouri, bond of the denomination of $500, and some two hundred dollars in cash. The Johnson county bond was sold by appellee for about the same amount at which it was charged to him by the guardian, and the coupons were collected on the Muhlenburg bonds once in 1873, and on the Cass county bonds until some time in 1874. Appellee had notice of the refusal to pay the interest on these bonds at the several dates at which default was made, and for something like a year after he received the bonds from his guardian their market value remained about the same. Appellee received the bonds from the guardian at about what they were worth in the market at the time of settlement, and made no complaint to the guardian until some time in December, 1877, when he tendered to him the Muhlenburg bonds, Cass county bonds, and demanded that the guardian receive them and pay to him their estimated value in money at the date of the settlement in December, 1872. This the guardian refused to do, and this action was brought against the guardian and his surety, W. T. Hardin, on the 10th of December, 1877, to compel him to receive the bonds and pay in cash the value at which they were passed to appellee. No question is made by the pleadings as to the correctness of the settlement with the county court, nor is there any complaint that the bonds were charged to the appellee for more than their market value. The only complaint is that the bonds were worthless at the time appellee received them; that the guardian knew that fact, and that by reason of appellee's great confidence in his guardian, he was induced to accept the bonds on the representation of the guardian that he had invested the money of appellee in them, and that he would be compelled to accept them. We have already seen that appellee received the bonds at

Hardin's adm'r v. Taylor.

their market value, and that for some time thereafter the bonds remained about the same in the market, but at the date of the institution of this suit they were comparatively worthless. It is also in evidence that about the time of this settlement the guardian purchased a number of these same bonds for himself and for other members of his family, and that at the time of his death held and owned some $4,000 face value of the bonds. The only evidence of undue influence or overpersuasion is that the guardian sought a settlement with appellee the day he was twenty-one years of age, and represented to him that the money of appellee had been invested in the bonds, and that he would be compelled to take them. This is the statement of appellee, but there is other evidence in the record tending to show that appellee made inquiry about these bonds before he received them on settlement, and that he preferred them as an investment to the money. Appellee's petition negatives the idea that the bonds were bought with appellee's money and for him, and expressly avers that the purchase of the bonds was a private venture by the guardian for his own benefit.

The judgment of the court below seems to go upon the idea that this is a proceeding to surcharge the settlement with the county court, when in fact it is substantially an action to cancel, on the ground of undue influence, the contract between the guardian and the ward under which the ward received the bonds.

It is conceded that the receipt is not conclusive on appellee, and that it is the duty of the court to scrutinize such settlements, made so soon after the majority of the ward, with the greatest care, and that the burden of proving good faith on the part of the guardian is on him. When all of this is granted, we think the evidence does clearly establish,

beyond question, good faith on the part of the guardian. The bonds were good in the market at the time they were delivered to appellee, and so remained for some time thereafter. There was no false representation made by the guardian as to the value of the bonds, and no concealment of any fact affecting their value, present or prospective, which was within the knowledge of the guardian. These are the considerations that must determine the good faith and validity of the contract, and not the fact that the bonds subsequently became comparatively worthless. The commercial world, which establishes the standard of values in such cases, trusted in them, and they were actually worth at that time what the guardian represented them to be worth. The transaction is not different in principle from a case where the guardian delivers to the ward a horse, or other personal property, in discharge of his indebtedness, which afterwards becomes of less value by reason of the depreciation of the market.

The manuscript opinion of June 4, 1873, in the case of Commonwealth for Muir v. J. S. Coleman does not lay down a different rule. There the guardian assigned to his ward, a few months after he was of age, a note on two persons, one of whom was then known to the guardian to be insolvent, and without notifying the ward of that fact, and without giving him notice that suit must be brought to the next term of the court in order to bind the guardian on the assignment. One of the parties to this note was a surety, lacking less than three months of being released by lapse of time. It was held that the concealment of these facts was a fraud upon the ward, and entitled him to recover the money.

Good faith and fair dealing is required of the ward as well as of the guardian, in order to hold either the guardian or his surety liable. If there existed any ground for setting aside the contract, and we think there is none, it was a duty the ward owed to the surety to make known his objection within a reasonable time.

This is a much stronger case for the surety than the case of Benjamin Aarons and wife v. Julius Mendel (78 Ky. Reps., 427). In that case the evidence showed that the release had been unfairly obtained, and that the ward acquiesced in it for four years before bringing suit. In that case it is said:

"Was the conduct of Aarons and wife such as good faith toward the security demanded?

"As long as they failed to repudiate the settlement and release, the hands of the surety were tied. Their silence was equivalent to a declaration that they were satisfied, and the surety, knowing that the release had been executed, was lulled into supposed security. He neither knew the necessity for seeking indemnity nor had the legal right to demand it. He had no right to pay the debt and assume himself the position of a creditor. Until they should elect to avoid the settlement and release there was no debt to pay, and this they might never do; and having kept him so long in a position in which he was authorized by their conduct to believe he was finally discharged, and in which he was deprived by them of all right to seek indemnity, they were guilty of such bad faith toward him as ought, in equity and good conscience, to prevent them from now recovering."

Judgment reversed, and cause remanded, with direction to dismiss the petition.