## No. 11,044..

## CLARK *v.* VANCOURT.

PRACTICE.—*Bill of Exceptions.*—*Master Commissioner.*—Where exceptions to the report of a master commissioner require, on appeal, an examination of the evidence, it must be set forth in a bill of exceptions, signed by the master.

INFANT.—*Guardian and Ward.*—*Disaffirmance of Contract with Guardian.*—*Ratification.*—*Receipt.*—A ward may, after he becomes of age, disaffirm a contract which he made, while an infant, with his guardian, without restoring, or offering to restore, the property which he purchased and received under the contract; but where, after majority and without fraud or undue influence, such ward executes to his guardian a receipt for the value of the property received by him, such act is a valid ratification of the contract, even if such ward was ignorant of the fact that he had a right to disaffirm. *Fetrow* v. *Wiseman,* 40 Ind. 148, disapproved.

From the Tippecanoe Circuit Court.

*E. A. Greenlee* and — *Parsons,* for appellant.

*J. A. Stein* and *G. W. Collins,* for appellee.

COLERICK, C.—The appellant, as the guardian of the appellee, presented to the Tippecanoe Circuit Court, at its November term, 1882, his final settlement report, which was, by the court, referred for examination, as to its correctness, to a master commissioner, who was ordered "to report the facts and his conclusions of law thereon" to the court. Afterwards the appellee filed exceptions to the guardian's report, and they were also referred to said master commissioner under a like order. At the February term, 1883, of said court, the master commissioner made his report, in which was embraced a statement of the facts found by him and his conclusions of law thereon. Exceptions were filed by the appellant to the second and fifth specifications of the facts so found by the master commissioner, and to his conclusions of law upon the facts set forth in said fifth specification, which exceptions were overruled by the court, and the following final order was then made and entered: "And the court after

due consideration of said report" (referring to the report of the master commissioner) " and the exceptions thereto, after argument of counsel, overrules said exceptions, and does in all things approve, ratify and confirm said report, to all of which said guardian excepts; and it is ordered by the court that said guardian do amend his said final settlement report so that the same may conform to the findings, suggestions and conclusions of law of said master commissioner, and so as to show a final balance of $162.24 in favor of said William VanCourt, to all of which said guardian excepts."

The record shows that time was given to the appellant to prepare and file a bill of exceptions, but none was ever filed. The only errors assigned relate to the overruling of appellant's exceptions to the report of the master commissioner.

The evidence adduced before the master commissioner is not in the record, and hence we can not, in its absence, consider or determine the questions presented by the appellant's first exception to the report of the master commissioner, as their consideration necessarily involves an examination of the evidence. Where, in a case like this, exceptions to a report require, on appeal, an examination of the evidence, it must be set forth in a bill of exceptions, signed by the master commissioner. *Hauser* v. *Roth*, 37 Ind. 89; *Board, etc., v. Huston,* 12 Ind. 276; *Lee* v. *State, ex rel.,* 88 Ind. 256; *Cunningham* v. *Cunningham,* 94 Ind. 557.

The only question properly before us for consideration is, Did the master commissioner err in his conclusions of law, which were adopted by the court, upon the facts found and set forth in the fifth specification of the special finding of facts? Which facts, so found, were as follows:

" Said master finds that voucher No. 5, which purports to have been given for necessaries furnished said ward by his guardian, was in fact given for the price of a certain mare sold to said ward by his said guardian during the minority of said ward; that the said ward had no necessary need of a horse; that the said mare was, at the time she was so sold to said ward,

of the probable value of $100; that so soon as the guardian knew his said ward had been awarded a pension, which was in the fall of 1881, he procured said ward to execute a receipt in the sum of $100, purporting to be for 'necessaries,' but in reality being for the price of said mare; that said ward sold said mare to one Charles Stoddard, November 25th, 1881, for $50 in cash, one old watch (the proof showing it to be worth from $10 to $50), and a trunk, probably worth $6; that said Stoddard afterwards sold said mare for $116; that four days after said ward came of full age said guardian took his said ward to the office of his said attorney, where a new receipt was executed by said ward, the one now excepted to, and the first one was destroyed; that said guardian knew that said ward could disaffirm the said sale, but the said ward did not, at the time he signed said last receipt, know he could disaffirm said sale; that said ward has not tendered to said guardian either the said $50, or the said watch, or the said trunk, but still holds in his possession the said watch and the said trunk, and he has claimed his right to disaffirm said sale at the time of filing his said exceptions, but he says to your master that he is now willing to allow his guardian a credit equal to the amount of cash he received, to wit, $50."

The conclusions of law reached and declared by the master commissioner upon the facts above set forth were: "That said ward can disaffirm, and has elected so to do, the sale of said mare, without the tendering to said guardian of the cash received, or the watch and trunk received, from said Stoddard, which watch and trunk are now in the possession of said ward, and that the execution of the receipt after the said ward became of age, not knowing at the time that he could disaffirm said sale, was not a ratification thereof."

The law, as settled in this State, fully sustains the conclusion that was reached by the master commissioner, as to the privilege or right which the appellee possessed to disaffirm the contract which he made while an infant, without restor-

ing, or offering to restore, the property which he purchased and received from the appellant under the contract.

A contract made by an infant, although executed, is, as to him voidable—*Fetrow* v. *Wiseman*, 40 Ind. 148—and it may be avoided by him at any time during his minority, or on his arrival at full age—*Indianapolis Chair M'f'g Co.* v. *Wilcox*, 59 Ind. 429—without returning, or offering to return, to the other party, the property which was obtained from him under the contract. *Carpenter* v. *Carpenter*, 45 Ind. 142; *Towell* v. *Pence*, 47 Ind. 304; *White* v. *Branch*, 51 Ind. 210; *Dill* v. *Bowen*, 54 Ind. 204. But we are clearly of the opinion that the master commissioner erred in his conclusion of law, upon the facts found, that the execution of the new receipt by the appellee, after he became of age, was not, for the reason stated, a legal ratification by him of the contract which he made when an infant. There was no fact found showing, or tending to show, that any fraud, undue influence, or unfair means of any kind was resorted to or practiced by the appellant, or any other person, to persuade the appellee to ratify the contract; nor was there any fact found showing, or tending to show, that the ignorance of the appellee as to his legal right to disaffirm the contract, or withhold his ratification thereof, was induced by the appellant, or any other person. And yet, in the absence of such facts, and in the presence of the facts that were found showing that the contract so ratified was founded upon an adequate consideration, and was one that ordinary honesty required the ratification of, the master commissioner held that the appellee was not bound by his act ratifying the same, merely because he did not know that he had the legal right to disaffirm it.

It is true that a conflict exists in the authorities upon this question, and that some of the earlier cases probably sustain the master commissioner in his conclusion, but it is not supported by the more recent and better considered ones. The law on this subject is, in our opinion, correctly stated in Wharton on Contracts, section 57, where it is said: "Sup-

posing that there be no fraud on the part of the other contracting party, it is not necessary to the validity of an affirmance, that the person making it should be aware of its legal effects. He may have as little knowledge of these effects the day after as he had the day before he comes of age. But the line drawn by the law is necessarily arbitrary; and, as soon as he becomes of age, a knowledge of the legal character of his acts is imputed to him. It is true that there have been intimations that a ratification will not be recognized by the courts unless made with a knowledge of the consequences. If by this is meant that loose talk by a person just coming of age, or concessions induced by misstatements or suppressions of the other side, will not be regarded as ratification, the conclusion may be accepted as true. But to say that a knowledge of the legal consequences of a ratification is necessary to validate a ratification, not only interposes a condition it would be difficult to establish, and which would often be made dependent upon the testimony of the party himself long afterwards when his views may have changed, but would invalidate all ratifications, since there is no ratification all of whose legal consequences can be foreseen. Hence the better opinion is that a ratification, made by a person of sound mind, on arriving at his majority, will be held valid, if untainted with fraud or undue influence, though the party making it was not at the time aware that it bound him in law. If, however, the ignorance of the party ratifying be in any way induced by the other side, then the ratification will not be regarded as operative." See, to same effect, Metc. Con. 59; *Taft* v. *Sergeant,* 18 Barb. 320; *Ring* v. *Jamison,* 66 Mo. 424; *Morse* v. *Wheeler,* 4 Allen, 570; *Stevens* v. *Lynch,* 12 East, 38; *Anderson* v. *Soward,* 40 Ohio St. 325. In *Morse* v. *Wheeler, supra,* the cases sustaining the view expressed by the master commissioner in this case were ably reviewed, and shown to rest alone for their support on the mere *obiter dictum* of Lord ALVANLEY in the case of *Harmer* v. *Killing,* 5 Esp. R. 102.

In all the cases where the doctrine contended for by the

appellee has found sanction, the contracts in controversy were
*executory* and not *executed* ones, and in all the text-books where
the doctrine has been referred to, it has been with reference
to *executory* contracts only.   Although no sufficient reason oc-
curs to us why the doctrine, if correct, should not be applied
to *executed* as well as to *executory* contracts, yet we have been
unable to find a single case in the reports where it has ever
been so applied.   The only case which we have been able to
discover in the reports of this court, in which such doctrine
has been even referred to, is that of *Fetrow* v. *Wiseman*, 40
Ind. 148.   A careful examination of that case will show that
the question presented in this case was not involved therein,
and hence could not have been, and was not then, decided by
this court.   All that was said in that case upon the question,
now properly before us, by BUSKIRK, J., who prepared the
opinion, was *obiter dictum,* and so far as it seemingly con-
flicts with the views now expressed by us, is disapproved.
We have examined the cases of *Conaway* v. *Shelton*, 3 Ind.
334, and *Conklin* v. *Ogborn,* 7 Ind. 553, which are cited by
BUSKIRK, J., in *Fetrow* v. *Wiseman, supra,* and find that the
question involved in this case was not even adverted to in
those cases, much less discussed or decided.

   It follows, from what we have said, that, in our opinion, the
master commissioner erred in his conclusion of law that the
contract of the appellee was not, for the reason stated, legally
ratified by him, and for the error of the court in overruling
the appellant's exception thereto the judgment of the court
below ought to be reversed.

   It appears in the record that upon the suggestion of the
master commissioner, based upon his special finding of the
facts and conclusions of law, the court ordered the appellant
to amend his final settlement report by striking therefrom
the credit of $100 claimed by him and evidenced by the re-
ceipt that had been executed to him by the appellee at the
time of the ratification of the contract herein referred to, and,
in the language of the master commissioner, "take a credit

in place thereof of $50, as herein shown to be authorized by the ward." We think, for the reason stated by us, that the appellant was entitled to the credit of $100, claimed by him.

PER CURIAM.—The judgment or order of the court below is reversed, at the costs, in this court, of the appellee, and the cause is remanded with instructions to the court to allow the appellant an additional credit of $50 on the balance in his hands, as such guardian, as found and determined by the court below.

Filed Sept. 27, 1884.