No. 13,952.

## LINE ET AL. *v.* LAWDER ET AL.

GUARDIAN AND WARD.—*Informal Settlement.*—*Condition of Estate.*—*Securities Taken.*—*Duty of Guardian.*—A guardian who makes an informal settlement with, and obtains a release from, his ward, assumes the burden of making it clearly appear that he fully and fairly disclosed the condition of the ward's estate at the time of the settlement, and that he paid over the amount found due either in money or such securities as had been taken in pursuance of the order of the court, or in the exercise of such diligence and prudence as men display in the conduct of their own affairs. The burden rests upon the guardian to show affirmatively that he exercised the required degree of care in taking the securities which he turned over to his ward, or that they were good beyond peradventure, and that they will be collectible when they fall due.

SAME.—*Settlement.*—*Retention of Ward's Property.*—A settlement out of court, without turning over to the ward the money, property, or securities which actually constitute the trust estate, is not such a settlement as will stand in a court of equity when seasonably assailed.

SAME.—*Loans on Individual Credit.*—*Risk.*—Loans made on the credit of individuals, or firms, without security, or with doubtful security, are ordinarily at the risk of the guardian.

SAME.—*Insolvent Securities.*—*Exoneration of Guardian.*—In order that a guardian may be exonerated from loss on account of insolvent securities taken in the course of the guardianship, it is his duty to keep the trust estate separate from his own funds, and to act in good faith and observe that sound discretion and prudence usually exercised by diligent men about their own business.

SAME.—*Turning Over Estate.*—*Settlement in Good Faith.*—*Cancellation of.*—Where adequate care is observed, and the condition of the estate and the character of investments are truthfully reported to the court, as the law requires, a guardian may relieve himself and his sureties by turning over the estate to his ward, who has attained his majority, in the condition in which it actually exists at the time a settlement is made. Where a settlement is thus made, and it afterwards turns out that securities so taken and turned over were worthless, in order to justify a cancellation of the settlement there must appear to have been negligence or bad faith on the part of the guardian.

SAME.—*Notes Taken in Individual Transactions.*—*Acceptance of by Ward.*—*Release Not a Bar to Setting Aside Final Settlement.*—Where unsecured notes, the makers of which are of doubtful solvency, have been taken in

the individual transactions of the guardian, and where these have been accepted in lieu of money upon the faith that they were available solvent securities, the receipt and release of the ward is not a bar to the opening up of the final settlement.

SAME.— *Withholding Receipt and Release.—Guardian's Duty.*—In such case the law makes it the duty of the guardian to withhold the receipt and the release, and not secure his discharge as guardian until the money due his ward has been paid over.

SAME.—*Tendering Back Notes.— Condition Precedent.*—Tendering back the notes so taken is not a condition precedent to the maintenance of the action to set aside the final settlement. An offer of the ward at the hearing to return whatever may have been received is sufficient.

From the Huntington Circuit Court.

*B. M. Cobb, C. W. Watkins, J. B. Kenner* and *J. I. Dille,* for appellants.

*M. L. Spencer* and *W. A. Branyan,* for appellees.

MITCHELL, C. J.—This proceeding was instituted by Nettie S. Lawder and her husband to set aside the final settlement report of her former guardian, Benajah A. Line. It appears from the complaint that the ward was united in marriage, before she attained her majority, to Joseph Lawder, who was more than twenty-one years old. After her marriage the guardian obtained from his ward and her husband a release, and receipt in full for the amount which he informed them remained in his hands as guardian. It is averred, in substance, that he obtained the receipt by representing that he had in his possession available securities belonging to his ward, which he promised to collect, and pay over to her the amount due thereon before making a final settlement, and before obtaining his discharge as guardian, and that, in violation of his agreement, he presented his final account to the court and obtained his discharge without paying the amount due or delivering to his ward, or to any one on her behalf, anything of value on account thereof.

The evidence tends to show that at the time the instrument which is both a receipt and release was obtained the appellant, who was the uncle of the ward, represented to her

and her husband that certain notes which were payable to him as guardian, and which were not yet due, were good available securities, and that they represented the entire amount of his ward's estate. Relying upon these represent- ations the notes were accepted, and a receipt in full was signed by the ward and her husband. The notes were im- mediately delivered back to the appellant, who agreed to collect them, without any charge, and pay over the money to the ward's husband.

Nothing was ever collected, and, so far as appears, the makers of the notes were insolvent, and the securities were practically of no value. Although payable to the guardian, they do not appear to have been taken for trust moneys loaned by him, but for property sold belonging to him, or in his own personal transactions in his individual business.

One of the notes was put into judgment by the appellant while acting as the agent for the plaintiffs, the other two were afterwards delivered to the ward's husband, and were surrendered at the trial and deposited with the clerk by or- der of the court for the appellant's benefit. It was ad- judged that the confirmation of the final report, and the order discharging the guardian, be set aside, and the latter was ordered to present an account to the court for final set- tlement.

It is contended that the evidence does not sustain the material averments of the complaint, and that it was not sufficient to justify the order and judgment from which this appeal is prosecuted.

The receipt and release relied on by the appellant was not taken in pursuance of a settlement made in the presence of the court. A guardian who makes an informal settlement with, and obtains a release from his ward, assumes the bur- den of making it clearly appear that he fully and fairly dis- closed the condition of the ward's estate at the time of the settlement, and that he paid over the amount found due, either in money or in such securities as had been taken in

pursuance of the order of the court, or in the exercise of such diligence and prudence as men display in the conduct of their own affairs. The burden rests upon the guardian to show, affirmatively, that he exercised the required degree of care in taking the securities which he turned over to his ward, or that they were good beyond peradventure, and that they will be collectible when they fall due. *Slauter* v. *Favorite*, 107 Ind. 291, and cases cited. Before such a settlement shall be an exoneration, he is also bound to make full disclosure to the court of the settlement, and manner of payment, without any concealment or misrepresentation.

A settlement out of court, without turning over to the ward the money, property, or securities, which actually constitute the trust estate, is not such a settlement as will stand in a court of equity when seasonably assailed. *State, ex rel.,* v. *Greensdale*, 106 Ind. 364; *Manning* v. *Manning*, 61 Ga. 137; Schouler Domestic Rel., section 388, note 372–373.

While the notes turned over to the ward in the present case were nominally payable to the guardian, the evidence tends to show that they were taken for the most part, at least, in his own personal transactions, and not for the loan of funds constituting the trust estate. Besides, it does not appear that the loans, if the notes were taken for loans, were prudently made upon collateral, or any other adequate security. Loans made on the credit of individuals or firms, without security, or with doubtful security, are ordinarily at the risk of the guardian. *Wyckoff* v. *Hulse*, 32 N. J. Eq. 697; *Estate of Post*, 57 Cal. 273; Schouler Domestic Rel., section 353.

A guardian, it is true, is not an insurer of the safety of investments made by him, nor is he to be held to an extraordinary degree of care, but in order that he may be exonerated from loss on account of insolvent securities, taken in the course of the guardianship, it is his duty to keep the trust estate separate from his own funds, and to act in good faith, and observe that sound discretion and prudence usually

exercised by diligent men about their own business. In making loans of the trust funds it is his duty to take security.

A loan made in good faith, and in the exercise of ordinary care and prudence, upon security which seemed ample at the time, will not be at the personal risk of the guardian if on account of changed circumstances or depreciation in values, loss subsequently occurs. *State, etc.,* v. *Slevin,* 93 Mo. 253 (3 Am. State Rep. 526).

Where adequate care is observed, and the condition of the estate and the character of investments are truthfully reported to the court, as the law requires, a guardian may relieve himself and his sureties by turning over the estate to his ward, who has attained his majority, in the condition in which it actually exists at the time a settlement is made. Where a settlement is thus made, and it afterwards turns out that securities so taken and turned over were worthless, in order to justify a cancellation of the settlement, there must appear to have been negligence or bad faith on the part of the guardian. *Hardin* v. *Taylor,* 78 Ky. 593.

Where, however, unsecured notes, the makers of which are of doubtful solvency, have been taken in the individual transactions of the guardian, in the manner already described, and where these have been accepted in lieu of money, upon the faith that they were available solvent securities, it requires a degree of assurance to insist that the receipt and release of the ward should be a bar to the opening up of the final settlement. *Breneman's Appeal,* 121 Pa. St. 641.

It is contended that there is no evidence in support of the averment in the complaint that the appellant agreed not to present the receipt and obtain his discharge from the court until after he had collected and paid over the money represented by the notes in question. Hence, it is argued, the motion for a new trial should have been sustained, because the material averment in the complaint, or upon which the application was predicated, was not proved. This view can not prevail.

Whether the appellant actually and in terms made such an agreement as is averred or not, the law made it his duty to withhold the receipt and the release, and not secure his discharge as guardian until the money due his ward had been paid over.    He will not now be heard to say that he did not agree to do that which the law and good conscience required of him.

Finally, it is contended that the ward must fail, because the notes were not tendered back before the application to set the settlement aside was made.

This view is not sustained.  This was not an ordinary action at law, which required, as a condition precedent to its maintenance, that a contract under which something of value had been obtained should be rescinded.    There was no contract to rescind, and the principles applicable to cases of the class cited are not controlling in a proceeding to set aside a final settlement report of a guardian.   In such a case, if a ward offers to return whatever may have been received, at the hearing, as in cases of equitable cognizance, it would be sufficient.  *Higham* v. *Harris,* 108 Ind. 246.

The judgment of the court did nothing more than set aside the confirmation of final settlement and report of the guardian.   It is fully within the power of the court to see that equity is done when a final report is made.

There was no error.

The judgment is affirmed, with costs.

Filed Feb. 7, 1890; petition for a rehearing overruled March 15, 1890.