# National Surety Company *v.* State of Indiana, ex rel. Heimann.

[No. 22,131. Filed November 19, 1913. Rehearing denied January 13, 1914.]

1. APPEAL.— *Special Findings.— Sufficiency.— Consideration as a Whole.*—In determining whether a special finding supports the judgment, the finding cannot be dissected into fragmentary parts, but must be considered as a whole. p. 60.

2. APPEAL.—*Special Findings.—Sufficiency.—Presumptions.*—In determining whether a judgment is supported by a special finding of facts, all intendments and presumptions are taken in favor of the finding rather than against it. p. 60.

3. INFANTS.—*Ratification of Contracts.—Guardian and Ward.*— What constitutes a ratification by an infant on arriving at majority is a mixed question of law and fact, relative in character, and depending somewhat on the nature of the transaction and on the relationship of the parties thereto; and while the law is careful to protect a minor in his dealings with persons generally, it is more zealous to defend him in transactions with one who bears a fiduciary relation toward him, so that in an action between guardian and ward stronger and more convincing proof is required to show a ratification than is necessary to show the affirmance, at majority, of a simple contract made by the infant himself. p. 61.

4. GUARDIAN AND WARD.—*Nature of Trust.—Duties of Guardian.*— A guardianship is a trust of the highest character in which the guardian acts for one whom the law regards as unable to act for himself, and though the guardian is not charged with the exercise of greater diligence and prudence than an ordinarily prudent man exercises in his own affairs of a like nature, he is expected to manage the estate to the best interest of the ward and be prepared to make a proper accounting at the ward's majority. p. 61.

5. GUARDIAN AND WARD.— *Private Settlement.— Presumption of Fraud.*—A ward on arriving at majority may himself settle the accounts of the guardianship with the guardian, ratify the acts of the latter, and release him from further liability; but the law does not favor such settlements, especially when made shortly after the ward becomes of age, and if the transaction is subse-

quently attacked by the ward, fraud will be presumed on the ground of public policy, and the guardian has the burden of rebutting that presumption. p. 62.

6. GUARDIAN AND WARD.—*Private Settlement.—Proof Requisite to Sustain.*—To sustain a private settlement between a guardian and his ward, and to overcome the presumption of fraud, the guardian must show that he fully and clearly disclosed the condition of the estate at the time of settlement, that the settlement was fair and equitable, and that the ward entered into it voluntarily and with full knowledge of all the facts and the law relating thereto. pp. 63, 65.

7. GUARDIAN AND WARD.—*Private Settlement.—Duty of Guardian.* —a guardian, on making a private settlement with his ward, is under a positive duty to disclose to the ward all the facts and circumstances which he himself knows, or is charged with knowing, and failure to do so may invalidate the settlement even in the absence of actual fraud. p. 63.

8. GUARDIAN AND WARD.— *Private Settlement.— Ratification by Ward.*—Where it appears that a former ward, shortly after reaching his majority, agreed with his guardian, who was his mother, to accept a half interest in a mercantile firm in lieu of the money he should have received, and that he knew at the time that the firm was largely indebted, that he voluntarily, and without any misrepresentation by the guardian, accepted the interest without making any investigation of the firm's affairs, and in fact had only an incomplete knowledge thereof, and it further appears that the guardian had commingled the guardianship funds with her own and had invested the same in the store and otherwise, and that her reports failed to disclose the true condition of the estate, such guardian was under a positive duty to disclose to the ward, at the time he accepted the half interest, the exact condition of the estate and the affairs of the firm, and his acceptance of the interest in the firm under such circumstances did not amount to a ratification of the guardian's settlement with him. p. 64.

9. APPEAL.—*Review.—Findings.—Conclusiveness.*—Where the evidentiary facts are such that men of equal fairness and intelligence may draw different conclusions, the finding of the trial court will be conclusive on appeal. p. 65.

10. GUARDIAN AND WARD.—*Following Trust Funds.—Remedies of Beneficiary.*—A beneficiary, where the trustee has divested himself of the trust fund, may either follow the fund or proceed against the trustee, and even though he may follow the fund successfully he is not bound to do so, hence a ward who suffered a loss by his guardian's investment of the funds of the estate in a mercantile pursuit, even though he could assert his claim against

the mercantile firm, was not bound to do so, but, in the absence of fraud, could recover on the guardian's bond. p. 66.

11. TRIAL.—*Issues.*—*Findings.*—The trial court's failure to find upon an issue tendered by a pleading is equivalent to a finding against the pleader. p. 67.

From Gibson Circuit Court; *O. M. Welborn,* Special Judge.

Action by the State of Indiana, on the relation of Norman D. Heimann, against Effie D. Byers and another. From a judgment for relator, the defendant, National Surety Company, appeals. *Affirmed.*

*Lucius C. Embree, Morton C. Embree, Charles L. Wilson* and *Romney L. Wilson,* for appellant.

*G. V. Menzies,* for appellee.

SPENCER, C. J.—This is an appeal by National Surety Company from a judgment of the Gibson Circuit Court rendered in an action brought by the State of Indiana, on the relation of Norman D. Heimann, against Effie D. Byers, as principal, and appellant, as surety, on a guardian's bond. The sole question which appellant here presents is that the trial court erred in its conclusions of law on the facts specially found. The determination of this question necessarily requires a careful examination of the special findings but, although they are twenty-one in number and quite lengthy and full, it will suffice here to set out a concise statement of them as follows:

On April 28, 1904, when the relator was past fifteen years of age, his father died, leaving to the relator and his mother, Effie D. Heimann, about $34,000 and certain real estate. On May 9, 1905, Effie D. Heimann was appointed guardian of the relator and she, with appellant as surety, executed the bond here sued on. As such guardian she made reports to the probate court in which such guardianship was pending, from time to time, none of which reports were full or complete, but it appeared therefrom that said guardian had her ward's money in cash. In fact, however,

she commingled his money with her own, bought real estate in her own name, made loans and took mortgages in her own name, and at no time secured any order from the court in regard to the investment of her ward's funds. In August, 1905, she married one Sunderland, who afterwards died, and she thereafter married P. H. Byers, who was her husband at the time this suit was instituted. Some months prior to September, 1908, when the relator was nineteen years of age, said guardian, her husband and the relator discussed the purchase of a stock of merchandise then in a store building belonging to the relator and his mother, and they concluded that this would be a desirable business for the relator when he arrived at his majority. Negotiations were begun for the purchase of the business but failed upon a disagreement as to the price. Shortly thereafter the relator went to Florida on account of his health. Early in September, 1908, negotiations were renewed by the owner of the stock of goods on the one hand and Effie D. Byers and her husband on the other, and an agreement was reached that the latter would purchase said stock of goods at the inventory or invoice price. The relator then being in Florida his mother wired him to return at once, which he did and assisted in taking the invoice of said goods, which were purchased for the sum of $11,694.20. Within a short time after said purchase additional merchandise to the amount of $5,000 was bought and all paid for out of the commingled funds of the relator and Effie D. Byers. These goods were purchased in the name and for the firm of Heimann & Byers and the business was conducted under such firm name. During the following year the relator was away from Poseyville much of the time, attending school at Bloomington and Evansville, Indiana, but when at the place of business he took part in the management thereof. He drew checks on the firm bank account, signing "Heimann & Byers, by Norman D. Heimann," but he did not receive nor was he credited on the books of

the firm with any stated salary. He had a running account with the firm against which he from time to time drew such money as he needed. He became of age on February 27, 1910. On the following day he agreed with his guardian to take a one-half interest in the stock of goods belonging to the copartnership of Heimann and Byers in lieu of his money which his guardian had invested therein and to become a member of said firm. At that time the firm was largely in debt, its credit was strained and it was in danger of insolvency. After he became of age the relator participated personally in a number of large financial transactions with banks and other creditors of the firm and on March 10, 1910, he wrote to a St. Louis firm as follows: "I took a half interest in the stock of goods of the firm of Heimann & Byers on the 28th day of February last. The firm is at present composed of Mrs. P. H. Byers (my mother), Mr. P. H. Byers and myself." The agreement of the relator on reaching his majority to become a member of said firm was made without any investigation of the books or affairs therof and without any knowledge thereof on his part, except such as he had acquired in participating in the management of the business. He knew the firm was largely in debt and stated to a banker that he was a member of the firm and the bank would lose nothing. No misrepresentations were made to him by his guardian or any one else to induce him to become a member of the firm but he did so voluntarily, believing that if the business was properly managed it would be a success. Between the 10th and the last of March, 1910, the relator ascertained from an examination of the books of the firm that its affairs were in bad shape financially. He took no steps to withdraw from or dissolve the partnership but he did state to his mother, his guardian, that he had concluded he wanted his money instead of having anything to do with the store. The firm continued until April 29, 1910, when, for the purpose of winding up its

affairs and paying its indebtedness, the relator, P. H. Byers and Effie D. Byers, executed to one Ezra Stephens a trust deed wherein they transferred to said Stephens all the assets of the firm and certain real estate located in Evansville, Poseyville and Haubstadt, Indiana. Said trustee sold the stock of goods and part of the real estate, settled the indebtedness of the firm and conveyed the remainder of the real estate to the relator at the agreed and fair price of $10,730 as a payment on the amount due him from his guardian. On April 18, 1910, Effie D. Byers, as said guardian, filed in the circuit court her report in final settlement of the guardianship, which report showed a balance due her ward in the sum of $18,485.38. Said report did not contain a true statement of all the funds she had received for her ward, and represented that she had on hand the balance shown therein, when in fact she had commingled the funds of her ward with her own and had invested the same in her own name and without any authority, order or approval of the court. Appellant had a general agent in the State of Indiana and a local agent in Posey County during the pendency of said guardianship and, by the exercise of reasonable inquiry, could have ascertained the fact that such guardian was commingling said ward's estate with her own and converting it to her own use, but took no steps to ascertain the same or to control the management or investment of the ward's funds. The general agent of appellant knew of the trust deed and the terms thereof before the trust created was carried out and made no objection to the execution thereof by the trustee, or to the application of the assets realized thereunder. Said agent visited the relator and corresponded with the trustee during the months of May, June, July and August, 1910, concerning the liability of appellant upon the bond sued on. The court further found that Effie D. Byers received nothing nor was she allowed anything for her services as guardian, and that

owing to the manner in which she administered the trust, such services were of no value to the estate; that the balance due from said guardian to the relator is $8,305.30.

Upon these facts the court stated its conclusions of law to be, in substance, as follows: (1) that the agreement of the relator, on his becoming of age, to become a member of the firm of Heimann & Byers, and his subsequent acts with relation to the business of said firm did not amount to a ratification of the investment of his money by said guardian; (2) that by joining in the execution of the deed of trust and by consenting to the application of the assets of the firm to the payment of partnership debts to the exclusion of his claim against said guardian, the relator did not in any manner prejudice the rights of appellant nor release any property that might have been applied to the satisfaction of the debt owed to the relator by his said guardian; and (3) that the relator is entitled to recover from Effie D. Byers, as principal, and appellant, as surety, the sum of $8,305.30.

In determining whether these conclusions are supported by the facts as specially found it is necessary to bear in mind the rule thus stated in *Cleveland, etc., R. Co.*

1. v. *Closser* (1890) 126 Ind. 348, 367, 26 N. E. 159, 9 L. R. A. 754, 22 Am. St. 593, "a special finding, like a special verdict, a series of instructions, or the like, must be considered as a whole, and it cannot be dissected into fragmentary parts and successfully assailed in detail. One part may be considered in connection with other connected parts, or parts referring to the same transaction, and if taken as a whole the finding legitimately supports the judgment it will be upheld." And in determining

2. whether the judgment is thus supported, all intendments and presumptions are in favor of the finding rather than against it. *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629, 14 L. R. A. (N. S.) 483; *Kedey* v. *Petty* (1899), 153 Ind. 179, 54 N. E. 798.

The most serious question to be determined in this appeal may be thus stated, Did the act of the relator in entering into the partnership of Heimann & Byers after he became of age and his subsequent acts with reference to the business of said firm constitute in law such a ratification of his guardian's investment as will now estop him from asserting a claim against appellant? What constitutes a ratification by an infant on arriving at his majority is a mixed question of law and fact which is relative in character, and its solution depends somewhat on the nature of the transaction in which it is sought to be established, and on the relationship of the parties thereto. For example, in an action between guardian and ward, stronger and more convincing proof of ratification will be required to bind the minor, than will be necessary to show the affirmance at majority, of a simple contract made during minority by the infant himself. However careful the law may be to protect a minor in his dealings with persons generally, it is even more zealous to defend him in transactions with one who bears a fiduciary relation toward him. In this case, the effect of appellant's contention would be to establish such an approval by the relator of his guardian's investment of his money as would, in law, amount to a settlement between the guardian and her ward. Whether the relator's acts can be so construed must be determined by the law governing such settlements.

A guardianship is a trust of the most sacred character in which the guardian, or trustee, acts for one whom the law regards as unable to act for himself. He is given certain broad powers with reference to the care and management of the trust property and, although not charged with the exercise therein of greater diligence and prudence than an ordinarily prudent man exercises in his own affairs of a like nature, he is expected to manage the estate to the best interest of the ward and be prepared to pay over the same to the ward when the latter

arrives at majority. The ward at that time has the
5. legal right himself to settle the accounts of the
guardianship with the guardian, to ratify the acts
of the latter with respect to the trust estate and to release
him from further liability. But the law looks with dis-
favor on settlements of this character, especially when made
shortly after the ward becomes of age, and if the transaction
is subsequently attacked by the ward, the law presumes
fraud, on the ground of public policy, and throws the burden
of rebutting that presumption on the guardian. *Indiana
Trust Co.* v. *Griffith* (1911), 176 Ind. 643, 649, 95 N. E.
573; *Line* v. *Lawder* (1889), 122 Ind. 548, 23 N. E. 758;
15 Am. and Eng. Ency. Law (2d ed.) 87, and cases cited;
2 Pomeroy, Eq. Jurisp. §961; *McParland* v. *Larkin* (1895),
155 Ill. 84; *McConkey* v. *Cockey* (1888), 69 Md. 286, 14
Atl. 465; *Gillett* v. *Wiley* (1888), 126 Ill. 310, 19 N. E. 287,
9 Am. St. 587.

As is said in 1 Story, Eq. Jurisp. (13th ed.) §317, courts
of equity "will not permit transactions between guardians
and wards to stand, even when they have occurred after
the minority has ceased and the relation becomes thereby
actually ended, if the intermediate period be short, unless
the circumstances demonstrate, in the highest sense of the
terms, the fullest deliberation on the part of the ward, and
the most abundant good faith *(uberrima fides)* on the part
of the guardian. For in all such cases the relation is still
considered as having an undue influence upon the mind of
the ward, and as virtually subsisting, especially if all the
duties attached to the situation have not ceased; as if the
accounts between the parties have not been fully settled, or
if the estate still remains in some sort under the control of
the guardian." The same rule is thus tersely stated in
*Baum* v. *Hartmann* (1907), 226 Ill. 160, 167, 80 N. E. 711,
117 Am. St. 246, in language which is particularly applicable
to the case at bar: "Knowing the powerful influence which
a guardian has over his ward, especially when the whole

estate of the ward is in the hands and control of the guardian, courts of equity have ever regarded with jealous watchfulness all transactions between guardian and ward, and where such position of influence is strengthened by the fact of intimate relationship existing between the parties, greater reason exists for the strict adherence to the rules above announced. Whenever a transaction between guardian and ward which is prejudicial to the interest of the latter is brought under the scrutiny of a court of equity, there is a strong presumption that the transaction has resulted from the undue influence which the guardian is presumed to have over the ward, and the law casts the burden of proof upon the guardian to establish to the satisfaction of the court that the act proceeded from the independent and uninfluenced will of the ward.''

To overcome this presumption and sustain a private settlement with his ward, the guardian is required to show that he fully and clearly disclosed to the ward the condi-

6. tion of his estate at the time of settlement, that the settlement was fair and equitable, and that at the time it was entered into, the ward acted voluntarily and with full knowledge of all the facts and the law relating thereto. 21 Cyc 107, 169, and cases cited; *Line* v. *Lawder, supra,* 550; *Brandau* v. *Greer* (1909), 95 Miss. 100, 48 South. 519, 21 Ann. Cas. 1118; *Harris* v. *Carstarphen* (1873), 69 N. C. 416, 418. It is not sufficient that the ward could have obtained the requisite information by the exercise

7. even of ordinary care. A positive duty is placed on the guardian to disclose to his ward all the facts and circumstances surrounding the estate which he himself knows, or is charged with knowing, in order to enable the ward exactly to comprehend the character of his act, and even in the absence of actual fraud there may be such a want of communication between the parties as will preclude a court of equity from giving to a settlement or ratification, the effect of an estoppel. *Gregory* v. *Orr* (1883), 61 Miss.

307, 310; *Womack* v. *Austin* (1869), 1 S. C. (1 Rich.) 421, 425. The rule is extremely strict and, at times, may work hardship in cases where there is no actual unfairness, yet if the court believes that the ward's acts were influenced to his detriment 'by the relationship, his ratification may be set aside. Were the rule otherwise it would invite rather than discourage private settlements between guardian and ward, and the law would thus lend its assistance to fraud in a great number of cases. To quote from *Stark* v. *Gamble* (1862), 43 N. H. 465, 467, "courts of equity are extremely watchful to prevent a guardian taking an advantage of his ward by a settlement immediately on his coming of age, and although there may be no other evidence of undue influence, or unfairness, yet upon grounds of public utility the courts will take care that the ward does not suffer by such settlement."

The court found, in the case at bar, that when the relator, on February 28, 1910, agreed to accept a one-half interest in the firm of Heimann & Byers in lieu of his patrimony, he knew that said firm was largely in debt and that its credit was strained; also that "no misrepresentations were made to him by his guardian, or any one else, to induce him to become a member of the firm, but he did so voluntarily." On the other hand, it also appears that the relator agreed to become a member of said firm "without any investigation of the books or affairs thereof, and without any knowledge thereof on his part, except such as he had acquired in participating in the management of the business." That this knowledge was incomplete is evident from the finding that he did not consider the firm insolvent. Under the facts of this case, the guardian was not justified in assuming a negative position but it was her positive duty to inform the ward of the facts which would have entitled him to reject the partnership agreement and to demand and receive his money. There is nothing in the finding to indicate that she fulfilled her duty in that respect.

Furthermore, it does appear that throughout the guardianship she commingled the ward's money with her own and invested it in her own name; that her reports to the court during that period were incorrect, and failed to show the actual condition of her trust, and the manner in which she had loaned and invested her ward's money. Taking into consideration the guardian's mismanagement of the trust estate, her failure to advise the relator, when he arrived at majority, of the actual condition of such estate, and her willingness that he should accept an interest in an insolvent business enterprise in lieu of the large sum for which it was her duty to account, the trial court concluded, in effect, that the guardian did not act in good faith in making such settlement and that, under the conditions which then existed, the relator's several acts of ratification should not estop him from asserting a claim against his guardian. This conclusion must stand. Where evidentiary facts are undisputed and are of such a nature as to permit but one inference as to the ultimate fact to be drawn therefrom, the appellate court may draw that inference; but where the facts are such that men of equal fairness and intelligence may draw different conclusions, the finding of the trial court will not be disturbed on appeal. *Kaufman* v. *Alexander* (1909), 173 Ind. 136, 141, 88 N. E. 502; *Adams* v. *Laugel* (1895), 144 Ind. 608, 611, 42 N. E. 1017; *Darter* v. *Grubb* (1914), 56 Ind. App. ——, 102 N. E. 843.

Appellant admits that in some jurisdictions the rules governing private settlements between guardian and ward are as above stated but contends that in this State the guardian does not assume the burden of showing lack of undue influence on his part and full deliberation on the part of the ward. In support of this contention the cases of *Sherry* v. *Sansberry* (1852), 3 Ind. *320, and *Clark* v. *VanCourt* (1884), 100 Ind. 113, 50 Am. Rep. 774, are cited. The decision in the Sherry case

does not modify the rule above announced. The court therein held that if, on arriving at full age, a ward should accept the benefits of a contract made with his guardian during minority "and thus affirm the act of his guardian, it being done with full knowledge of all the facts, and without fraud on the part of the guardian, the ward will be bound by such acceptance." In that case the ward contracted with his guardian, two years before majority, for the land in controversy at an agreed price. He went into possession, made improvements on the land and fully understood its quality and value. He accepted a deed therefor on arriving at full age and retained the use and possession of the land for fifteen months thereafter without objection. He acted with full knowledge of all the facts and on his own unbiased judgment. It is true that in the course of the opinion the court does say that "If there were any circumstances in the case making it fraudulent, he (the ward) should have shown them", but the decision in that case is not applicable here. In *Clark* v. *VanCourt, supra,* there are suggestions that the burden of proof in cases of this character rests on the ward but the latter decision of *Line* v. *Lawder, supra,* 550, expressly held that "A guardian who makes an informal settlement with, and obtains a release from his ward, assumes the burden of making it clearly appear that he fully and fairly disclosed the condition of the ward's estate at the time of the settlement, and that he paid over the amount found due, either in money or in such securities as had been taken in pursuance of the order of court, or in the exercise of such diligence and prudence as men display in the conduct of their own affairs."

Appellant further contends that the act of the guardian in investing the relator's money created a trust in his favor; that this trust was a lien on all of the property owned 10. by the firm of Heimann & Byers, and superior to the claims of general creditors; that when the relator, with knowledge that his guardian was insolvent, voluntarily

joined in the deed of assignment and thus lost his claim against said property, he discharged appellant *pro tanto*, since the claim was one to which appellant was entitled to be subrogated. Appellant's conclusion does not follow from its premise. Where a trustee has divested himself of the trust fund, the beneficiary may either follow the fund or proceed against the trustee but the selection of the remedy to be pursued rests wholly with the beneficiary and he is not compelled to follow the property, even though he is able to follow it successfully. *Haxton* v. *McClaren* (1892), 132 Ind. 235, 243, 31 N. E. 48; *Oliver* v. *Piatt* (1845), 44 U. S. (3 How.) *333, *400, 11 L. Ed. 622; *Prewitt* v. *Prewitt* (1905), 188 Mo. 675, 683, 87 S. W. 1000; *Copper* v. *Landis* (1876), 75 N. C. 526, 530. Conceding, without deciding, that the relator was entitled to assert his claim against the assets of the firm of Heimann & Byers, his guardian could not force him so to do and in the absence of fraud appellant, as surety, occupies no better position in that regard than its principal. By its cross-complaint herein, appellant raised the issue of collusion between the relator and his guardian but the finding of the trial court is silent on that issue. This is equivalent to a finding against the pleader. *McAdams* v. *Bailey* (1907), 169 Ind. 518, 534, 82 N. E. 1057, 13 L. R. A. (N. S.) 1003, 124 Am. St. 240; *Maxwell* v. *Wright* (1902), 160 Ind. 515, 517, 67 N. E. 267.

For the reasons above stated, we hold that the trial court did not err in its conclusions of law on the facts specially found, and the judgment is therefore affirmed.

NOTE.—Reported in 103 N. E. 105. See, also, under (1) 38 Cyc. 1930; (2) 3 Cyc. 310; (3) 22 Cyc. 692; (4) 21 Cyc. 78; (5) 21 Cyc. 169; (6) 21 Cyc. 170; (9) 3 Cyc. 360; (10) 39 Cyc. 532, 535; (11) 38 Cyc. 1984, 1985. As to common-law powers and duties of guardian, see 89 Am. St. 257.