## Howard v. Asher, et al.

(Decided March 8, 1927.)

### Appeal from Bell Circuit Court.

1. Depositions.—Where purchaser begins action against vendor to recover purchase price, and, after vendor's death action is revived against administrator and heirs, testimony of plaintiff by deposition taken during vendor's lifetime of representations made to purchaser by deceased held inadmissible under Civil Code of Practice, section 606, subd. (2).

2. Vendor and Purchaser.—In action by purchaser against vendor to recover purchase price because of alleged misrepresentations of vendor as to title, evidence held to show that purchaser had full knowledge, at time of purchase and payment, that there was a serious question as to vendor's title.

3. Bills and Notes.—Where purchaser of land gave vendor note to be returned, if suit, then pending, attacking vendor's title, was decided adversely, and purchaser subsequently bought the adverse interests, which were unquestionably superior, held that purchaser was entitled to return of note.

MARTIN T. KELLY for appellant.

LOW & BRYANT for apppellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

This equitable action was instituted in the Bell circuit court by appellant, Jacob Howard, against Joe and Sarah Asher, to recover $7,100.00, the amount paid by appellant to him on the purchase price of a tract of land conveyed by them to him, upon the theory that he was induced by Asher's fraudulent representations to purchase and pay for the land. It was sought also to cancel as fraudulent certain deeds from Asher to his wife. During the pendency of the action the defendant, Joe Asher, died and it was revived in the name of his administrator and heirs. Various defenses were interposed, and, upon the trial below, the chancellor concluded that appellant had not manifested his right to the relief sought and entered judgment dismissing his petition. Hence the appeal.

It appears that on May 23, 1921, Joe Asher conveyed to appellant a tract of land described by metes and bounds lying in Clay county, Kentucky, for the recited consideration of $8,000.00; $2,000.00 of which was paid in cash; $2,000.00 payable in 90 days; $2,000.00 in 6 months; and $2,000.00 in 12 months, notes being executed to evidence the unpaid purchase price: and that subsequently $5,100.00 was paid on these notes, making a total of $7,100.00 of the purchase price of the tract of land paid by appellant. It was alleged in the petition that in the negotiations leading to his purchase of the tract of land Joe Asher falsely and fraudulently represented to appellant that he owned it in fee-simple title, when in fact he had no title; and that he did so for the fraudulent purpose of inducing appellant to purchase it; and that he, relying upon those representations and believing them to be true and without knowledge that they were untrue, purchased the tract of land, took deed of conveyance for it and paid $7,100.00 of the purchase price; that he then learned that appellee had no title but that the land was

owned and held by another; and for that reason he was entitled to recover the purchase money so paid by him.

It appears that Joe Asher died before this action was submitted for trial and judgment, and the record contains no competent evidence as to any representations made by him to appellant at and before the deed of conveyance was made. No one testified herein on that question save appellant, Jacob Howard. Though he gave his deposition before Asher died, his testimony as to what was said by Asher when the land deal was made, who was dead when the action was submitted and who died without having testified, is clearly forbidden by subsection 2 of section 606, Civil Code of Practice. Hardin's Admr. v. Taylor, 78 Ky. 593; Ferguson v. Staton, 19 R. 979, 42 S. W. 732; Newman v. Blades, 21 R. 1353, 54 S. W. 849.

The deed to appellant was made May 23, 1921. On September 30th following, Daniel Jackson, who appellant's petition alleges owned and was in possession of the tract of land conveyed to him by Joe Asher, instituted an action against appellant, Jacob Howard, and Joe Asher, alleging his ownership and possession of the tract of land in controversy and seeking to quiet his title of their alleged spurious claims. Just when the summons in that action was served on appellant does not appear, but he does appear to have answered on the 17th day of January, 1922. According to the allegations of appellant's petition $3,100.00 of the $7,100.00 alleged to have been paid Joe Asher for the land in question was paid long after appellant filed his answer in the action instituted by Daniel Jackson against him; and $2,000.00 was paid on October 25, 1921, which was 26 days after Jackson had instituted his action and perhaps after the summons had been served on appellant.

The testimony for appellant herein tends to establish that Joseph Asher claimed title of the tract of land conveyed to appellant by inheritance from his father, Jackson Asher, and purchase from his brothers and sisters, the validity of his title depending upon establishing that his father, who died intestate, owned the tract of land at his death. Daniel Jackson's claim to title was founded upon a deed made by Jackson Asher, the father of Joe Asher, to Thos. M. Asher, and mesne conveyances to him. It appears that a page in one of the deed books of the Clay county court clerk's office had been removed, being the page on which the deed from Joe Asher's

father, Jackson Asher, to Thos M. Asher was recorded; but that before the deed book was so mutilated and the record evidence of Jackson Asher's conveyance to Thos. M. Asher was so destroyed, a certified copy of that deed had been procured which was introduced in evidence in the action between Daniel Jackson and appellant, Jacob Howard, and Joe Asher; and in that way the unquestioned superiority of Daniel Jackson's claim to the land in question was established. It appears that after the institution of the Daniel Jackson action a deal was made between appellant and Asher by which the latter repurchased from appellant an undivided half interest in the tract of land in question, although no reconveyance was made. While the matter stood thus one of the $2,-000.00 notes originally executed by Howard to Asher, which the latter had endorsed to a bank, was paid, $1,000.00 by Howard and $1,000.00 by Asher. Eventually, however, and on May 16th, 1923, Asher and appellant appear to have mutually agreed to abandon the latter deal; and on that date on a settlement between them growing out of appellant's original purchase and Asher's repurchase of the half interest and their rescission of the latter deal appellant executed two new notes to Asher, one for $1,100.00 and the other for $900.00. The $1,100.00 note was delivered to Asher and subsequently paid, but the $900.00 note was taken by Asher and Howard to the First State Bank of Pineville, Kentucky, and at their instance George H. Reese, the president of the bank, prepared the following writing, which was attached to the note after having been signed by them: "May 26, 1923. This note is to be delivered to Joe Asher if suit now pending is settled in his favor; if he loses then it is to be returned to Jacob Howard."

Subsequent to this time Daniel Jackson agreed to convey and executed a title bond for the land in question together with other lands owned by him, to B. O. Howard, a son of Jacob Howard; and the evidence tends rather strongly to establish that appellant himself was the real purchaser and that the contract was merely made in the name of his son. On August 24, 1923, Jackson and wife conveyed to B. O. Howard the land covered by the title bond. On November 9, 1923, B. O. and Jacob Howard joined in a deed of conveyance to T. J. Asher for all the land. It does not appear that the action be-

tween Daniel Jackson and appellant, Howard, and Asher, has been prosecuted to a conclusion, but there is nothing left to be litigated therein, since all of the conflicting claims have been united. It appears that in the deal for the larger body of land, which included the tract conveyed to appellant by Joe Asher, in view of the fact that the action was pending between Daniel Jackson and appellant, Howard, and Joe Asher, with reference to the title of a portion of it, the purchase price was reduced by Daniel Jackson $2,000.00.

When all these things are considered, it is impossible to escape the conclusion that Jacob Howard purchased this tract of land with full knowledge that there was a serious question as to whether Joe Asher had title or not. If he had purchased upon the faith of the alleged representations upon the part of Asher that he was the owner of the title, it certainly does not seem to accord with reason that, after obtaining knowledge that Daniel Jackson claimed to own the land which had been conveyed to him when the Jackson action was begun, he would have paid to Joe Asher any part of the purchase price which had not then been paid; but he paid the greater portion of it, which he seeks to recover with such knowledge. The contract between Howard and Asher prepared by the president of the First State Bank, quoted *supra,* appears to evidence a full settlement between them and the full extent of liability upon the part of either of them on account of this transaction. It was entered into in May, 1923, and after the issue had been made by all of the pleadings filed in the action between Jackson and them, and after all of the evidence had been taken which appears ever to have been taken. After thereby obtaining full knowledge as to the condition of the title of the tract of land he had purchased the note for $900.00 was delivered to the banker to be held by him under the agreement signed by appellant, Howard, and Joe Asher, that if Jackson should succeed in the action then pending with regard to the title of the land in question the $900.00 note Howard had executed to Asher should be delivered to Howard, but in the event Jackson should lose in that action then the $900.00 note should be delivered to Asher to be collected by him. The testimony is conclusive that the reference in that contract to the pending action was to the action between Daniel Jackson on the one part and Howard and Asher on the other.

So we have no competent evidence as to what representations Asher made to appellant when the deal was made. Appellant's contention that he, without knowledge of the condition of the title, relied upon Asher's representations in making the deal seems to be refuted by the fact that he paid $5,100.00 of the $7,100.00 he seeks to recover after he was given notice by the Jackson suit that another claimed the title he had purchased; by the fact that Asher repurchased a half interest after that suit was instituted; that subsequently and after obtaining full knowledge of the condition of the title appellant repurchased the half interest from Asher; and that at that time the contract with reference to the $900.00 note then executed was entered into by which the parties seem to have agreed upon a settlement. In view of these facts this court concludes that the chancellor properly adjudged that appellant failed to manifest the right to recover.

Appellees prosecute a cross-appeal, insisting that the chancellor erred in adjudging that the $900.00 note be delivered to appellant. To this we can not agree. If it be assumed that appellant purchased the outstanding title of Jackson and thereby in effect ended that litigation it is also true that the evidence conclusively establishes that he thereby availed himself of the only opportunity to save himself. The superiority of Jackson's title is established beyond question. That was the thing concerning which Asher and appellant contracted in reference to the $900.00 note. The chancellor properly directed that it be delivered to appellant.

The judgment, therefore, will be affirmed on both the appeal and cross-appeal.