MARIA C. BAUM

*v.*

BERNHARD HARTMANN *et al.*

*Opinion filed February 21, 1907—Rehearing denied April 4, 1907.*

1. GUARDIAN AND WARD—*fiduciary relation continues while estate is in hands of guardian.* The fiduciary relation between guardian and ward continues as long as the estate is in the hands of the guardian, even though the ward has become of legal age.

2. SAME—*a transaction between guardian and ward is closely scrutinized.* A transaction between guardian and ward, particularly where the guardian is the father of the ward and gains the entire estate of the ward without consideration, will be closely scrutinized by a court of equity, and clear proof that the ward acted of her own free will, with full knowledge of the facts, is essential to overcome the presumption against the validity of the transaction.

3. SAME—*what does not establish validity of receipt and order of discharge.* Testimony of the probate judge that he talked with the ward in the presence of the guardian, her father, and explained that by executing a receipt in full to the guardian without receiving any money, and by consenting to the entry of the order of the guardian's final discharge, she was releasing all her rights, but that she nevertheless insisted upon the execution of the receipt and the entry of the order, does not show that the transaction was fair.

4. SAME—*proof that ward knew she was giving away her estate is not sufficient.* Proof that the ward knew she was giving away her estate to her guardian when she executed a receipt in full and consented to the order for his final discharge is not sufficient to show the fairness of the transaction, without proof that she reached the determination to do so without being influenced to such action by the guardian.

5. SAME—*burden of proof upon person claiming benefit of trans-action between guardian and ward.* When a transaction between guardian and ward which is prejudicial to the interests of the ward is attacked by the latter in a court of equity, the guardian, or the sureties on his bond, have the burden of proving the transaction was the result of the independent and uninfluenced will of the ward.

6. SAME—*when sureties on a guardian's bond are liable.* The execution by a ward, without consideration, of a receipt in full to her guardian, and the consenting to the entry of the final order discharging the guardian, do not relieve the guardian's bondsmen from liability, where they have not been misled by the transaction nor changed their position by reason of the alleged settlement, and they may be held liable for the amount due from the guardian, with interest from the time he received the money.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

MILLER, WINKELMANN & OGLE, for plaintiff in error:

The receipt in question was signed by the ward in presence and by direction of her guardian, and not of her own free will and choice, at the time when he sustained towards her a dual relation of confidence, that is, first, the relation of parent; and second, the relation of guardian; and also at a time when she was only eight days past her majority, and while he had in his hands and under his control all her money. The transaction resulted in a gain to the guardian and his sureties and a most disastrous loss to the ward, and one which was wholly without any valuable consideration. Therefore a court of equity, when properly called upon to pass upon this transaction, will not suffer it to stand. *Ashton* v. *Thompson*, 32 Minn. 25; *McParland* v. *Larkin*, 155 Ill. 87; *Gillett* v. *Wiley*, 126 id. 310; *Carter* v. *Tice*, 120 id. 277.

To extend the time of payment indefinitely or to release her guardian altogether would, in either case, require a sufficient consideration to support it. None has been proven.

226—11

*Gardner* v. *Watson,* 13 Ill. 347; *Truesdell* v. *Hunter,* 28 Ill. App. 292.

There is no such thing as a gift of a debt. A gift implies the gratuitous transfer of property by one person to another and needs no consideration. Delivery is all that is essential. Not so with the release of a debt. This requires no delivery, but it does require a consideration to be binding. *Carter* v. *Gemblin,* 68 Ind. 487; *Green* v. *Langdon,* 28 Mich. 222.

The presence of the father and his directions to his daughter to execute the receipt, together with the language used by the probate judge informing her that her father was liable to a criminal prosecution if he failed to pay and release the bondsmen, amounted to a coercion in law. *Biddle* v. *Hale,* 99 Pa. St. 116; *Schiets* v. *Catlin,* 78 Wis. 611; *Eadie* v. *Slimmon,* 26 N. Y. 9; *Adams* v. *Bank,* 116 id. 613; *Taylor* v. *Jaques,* 106 Mass. 291.

L. D. TURNER, and BARTHEL & KLINGEL, for defendants in error:

Where a party is induced, by the acts or the declarations of another, to do an act he would not otherwise do or omit to do an act he would have done but for the conduct of such party, and injury results therefrom, the party who induced such action or non-action must be held responsible for the consequence. *Hefner* v. *Vandolah,* 57 Ill. 523; *Leeper* v. *Hersman,* 58 id. 218; *Kinnear* v. *Mackey,* 85 id. 96; *Hill* v. *Blackwelder,* 113 id. 283; *Casler* v. *Byers,* 129 id. 657; *Bank* v. *Miller,* 153 id. 244; *Cross* v. *Commission Co.* 153 id. 499; *Cheney* v. *Ricks,* 168 id. 533; *Friederich* v. *Wombacher,* 204 id. 72.

If the principal debtor does any act or makes any agreement for a valuable consideration without the consent of the surety, express or implied, and which tends to his injury, or which delays or suspends the right to coerce payment, to the prejudice of the surety, or which shall put the surety in a worse condition or increase his risk or impair the ultimate

liability over of the principal to him, the surety will be discharged. *Boynton* v. *Phelps,* 52 Ill. 210.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Maria C. Baum filed a bill in the St. Clair circuit court to set aside an alleged settlement made with her by her father as her guardian, and to vacate and annul the order of the probate court of St. Clair county approving his final report and discharging Simon Baum as guardian. Bernhard Hartmann and Jacob Spies were sureties on the guardian bond of Simon Baum. Hartmann and the administratrix of the estate of Jacob Spies were made parties defendant to the bill, in·which was a prayer for an accounting as to the money claimed to be due complainant and that a decree be entered for the complainant for the amount found to be due against the sureties on the guardian bond. Answers were filed by the defendants, and the cause was heard upon the bill, answers, replications and proofs heard in open court and a decree entered dismissing the bill for want of equity, to reverse which a writ of error was sued out from the Appellate Court for the Fourth District. The Appellate Court affirmed the decree of the circuit court, and the complainant below has sued out this writ of error to bring said decree into review before this court.

The evidence heard shows that at the August term, 1894, of the probate court of St. Clair county Simon Baum was appointed guardian for his two minor children, Charles W. Baum and Maria C. Baum, and that he executed the usual statutory guardian bond in the penal sum of $6800, with Bernhard Hartmann and Jacob Spies as sureties, and that he received as such guardian, soon after his appointment, the sum of $3400 which his wards inherited from their mother's father. It is not controverted that Simon Baum invested his wards' money in real estate and took the conveyance to himself, personally. Simon Baum then executed a mortgage upon said real estate to the sureties on his guar-

dian bond, reciting an indebtedness of $3400, but it is admitted that the mortgage was merely an indemnity against possible liability on the guardian's bond. Plaintiff in error attained her majority on the first day of June, 1899. She was then working out in St. Louis. Her father wrote her a letter requesting her to come to Belleville, which she did on the 8th day of June and her father met her, and she executed a receipt, in the presence of the deputy probate clerk, in which she recited that she had become eighteen years old on the first day of June, 1899, and that she had made full and final settlement with Simon Baum, as guardian, since she had arrived at said age. She acknowledged the receipt of $1700 in full of all demands against her guardian and entered her appearance in the matter of his application for final discharge. Her father did not pay her on that day, or at any other time, the $1700, or any part of it. It is not pretended that plaintiff in error received any consideration whatever for the execution of said receipt. After the execution of the receipt plaintiff in error and her father went before the probate judge, and after some conversation between the parties, in which the plaintiff in error told the judge that she had not been paid anything, an order was entered approving the report and discharging the guardian as to plaintiff in error.

The judge of the probate court testified, on behalf of the defendants in error, that plaintiff in error admitted in his presence that she had signed the receipt and that it was his impression that she said she understood it. He testified that he explained to her the nature of the receipt and the entry of appearance. He said that it is his recollection that there was something said about a note, but he does not say that any note was given. In his testimony the judge says that both plaintiff in error and her father became greatly excited and that plaintiff in error insisted on his being discharged, and that plaintiff in error was told by the judge that she was virtually making her father a present of this

money, and she said she understood it; that she knew it, and that she had an agreement with her father and she wanted the discharge entered. This witness stated that a matter of suit on her father's bond and possible criminal prosecution was talked about. That the witness said to the plaintiff in error: "You are the doctor; you understand now what is going on and what is happening; you are entirely releasing all claim you hold and have got," and she said she knew that; that she did not want to make her father any trouble; that she understood it all. Witness then said: "Well, then, I cannot help myself. Then I entered the order of discharge." On cross-examination this witness says that he suggested that a criminal prosecution of her father might be barred, and also a suit on the bond if he were discharged.

Charles W. Baum testified that he lived with his father until the latter's death, and that plaintiff in error also lived with him; that the money in question came through his mother and that upon her death it fell to him and his sister; that it was turned over to his father, as guardian; that he heard his father say that he would like to have the money from plaintiff in error; that plaintiff in error had never had any experience in any sort of business; that she was never interested in business of any kind. He says that his father spoke to him frequently about his part of the money, and told him he should do as his sister had done and not make him any trouble and let him have the money until he felt better able to pay it.

It was admitted that at the time this settlement was made with plaintiff in error there were a number of judgments against Simon Baum. Two witnesses testify that the plaintiff in error told them that she had loaned the money to her father as long as he needed it. Plaintiff in error was called as a witness in rebuttal and denied that anyone explained to her the meaning of the receipt before she signed it, and she denies having had any conversation with either

the deputy probate clerk or the probate judge with respect to the paper. She had testified in chief, but since her evidence at that stage of the proceeding was incompetent as to the administratrix of the estate of Jacob Spies we do not deem it necessary to set out such incompetent testimony, since the case must be determined upon the competent evidence in the record.

The sole question for determination in this case is whether the alleged settlement made by the guardian with plaintiff in error is a bar to her right to recover against the sureties on his bond. While plaintiff in error was a few days past eighteen at the time of the alleged settlement, still the relation of guardian and ward had not been terminated. The rule of law on this subject is, that the relationship continues as long as the estate is in the hands of the guardian. (*McParland* v. *Larkin,* 155 Ill. 84; Schouler on Domestic Relations, sec. 382.) There is here also the relation of parent and child. Under such circumstances, where the relation is so intimate, the dependence so complete and the influence so great, any transaction between the plaintiff in error and her father and guardian whereby he obtains a benefit at the loss of his ward will be regarded with the highest degree of suspicion. The presumption against such a transaction is so strong that it is hardly possible to overcome it. (2 Pomeroy's Eq. Jur. sec. 96; *McParland* v. *Larkin, supra.*) From the confidential relation existing between the parties all transactions between them which prejudicially affect the interest of the ward are constructively fraudulent. (*Carter* v. *Tice,* 120 Ill. 277.) The doctrine is thus stated in Story's Equity Jurisprudence, (vol. 1, sec. 217) : "Where the guardianship has, in fact, ceased by the majority of the ward, the courts will not permit transactions between guardians and wards to stand, even when they have occurred after the minority has ceased and the relation become thereby actually ended, if the intermediate period be short, unless the circumstances demonstrate, in the highest

sense of the term, the fullest deliberation on the part of the ward and the most abundant good faith on the part of the guardian, for in all such cases the relation is still considered as having an undue influence upon the mind of the ward and as virtually subsisting, especially if all the duties attached to the situation have not ceased,—as, if the accounts between the parties have not been fully settled, or if the estate still remains, in some sort, under the control of the guardian."

Knowing the powerful influence which a guardian has over his ward, especially when the whole estate of the ward is in the hands and control of the guardian, courts of equity have ever regarded with jealous watchfulness all transactions between guardian and ward, and where such position of influence is strengthened by the fact of intimate relationship existing between the parties, greater reason exists for the strict adherence to the rules above announced. Whenever a transaction between guardian and ward which is prejudicial to the interest of the latter is brought under the scrutiny of a court of equity, there is a strong presumption that the transaction has resulted from the undue influence which the guardian is presumed to have over the ward, and the law casts the burden of proof upon the guardian to establish to the satisfaction of the court that the act proceeded from the independent and uninfluenced will of the ward. *McParland* v. *Larkin, supra; Thomas* v. *Whitney,* 186 Ill. 225; *Dowie* v. *Driscoll,* 203 id. 480.

In the case at bar the defendants in error rely mainly upon the testimony of the probate judge as being sufficient to meet the requirements of the law in this regard, and as establishing the proposition that plaintiff in error made a free and voluntary settlement and released her guardian from all further liability to her. In our opinion the evidence falls far short of the claim that is here made for it. It is true, the testimony of the probate judge shows that he fully advised plaintiff in error of the effect of the receipt and discharge; that he told her that she was virtually relinquishing

all her estate and that she would receive nothing. The very fact that plaintiff in error persisted in her request for the discharge of her father after the serious and repeated admonitions of the judge convinces us that she was not a free agent and at liberty to accept the wholesome advice given her by the probate judge. It goes a long way toward convincing us that plaintiff in error was under the controlling influence of her father, which had so wrought upon her that the advice and suggestions of the probate judge were put aside without serious consideration and that nothing would satisfy her except the discharge of her father. It will be noted in this connection that the testimony of the probate judge only relates to the occurrences that took place in his presence. There is no evidence offered by defendants in error proving, or tending to prove, the absence of any influence exerted by the father over plaintiff in error before she went into the presence of the judge. It is not enough to relieve this transaction of the fraudulent character which the law imputes to it, to prove that plaintiff in error understood that she was giving away her estate, but the proof must go further, and show that she reached the determination to do so without being influenced by her guardian. It is easy to imagine how a suggestion from her defaulting guardian calling her attention to the serious consequences that threatened him in case she refused to go before the court and request his discharge would bring her to a state of mind which would manifest itself by conduct such as is attributed to plaintiff in error by the testimony of the probate judge. It is true, the evidence in this record does not affirmatively show that the guardian thus sought to alarm his daughter by reminding her of the danger of his situation; on the contrary, there is no evidence which negatives this supposition, and, as we have seen, the burden of proof upon this question is upon defendants in error. The sureties on the guardian's bond have in no way been misled into changing their position by reason of the alleged settlement.

They still hold the mortgage on the real estate purchased with the trust fund, and whatever rights this mortgage gave them they still have. There is no estoppel *in pais* and no *laches* against plaintiff in error. The guardian has not faithfully discharged his trust and paid over the money required by the bond. The defendants in error are clearly liable on the bond for the amount due the plaintiff in error, with interest from the time it was received by the guardian, and the only impediment in the way of recovery at law is the receipt and the order of the probate court, which it is the province of a court of equity to remove. Equity having obtained jurisdiction for this purpose will retain it to do complete justice.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court, with directions to enter a decree in favor of plaintiff in error for the amount which may be found, upon an accounting, to be due, disregarding the alleged receipt and order of discharge.

*Reversed and remanded, with directions.*