[No. 14114.   Department One.   August 17, 1917.]

*In the Matter of the Guardianship of* HENNING MARTIN ANDERSON *et al.*[1]

GUARDIAN AND WARD—TRANSACTIONS BETWEEN—CONVERSION—LOAN TO GUARDIAN.   Where a guardian had converted and misappropriated a fund due to his ward, and his account was unbalanced, it will not be held that the ward, on coming of age, "loaned" the money to the guardian, irrespective of an agreement to that effect, under the rule that such transactions are scrutinized with great care; since there was no fund to loan.

LIMITATION OF ACTIONS — FRAUD — DISCOVERY — ACTION BY WARD. Where a guardian, having converted the funds of his ward, contrived to "borrow" the sum of him at final settlement, the statute of limitations does not run against the ward until three years after discovery of the fraud.

GUARDIAN AND WARD — COMPENSATION — DEFAULTING GUARDIAN. Where a guardian converted and misappropriated the fund belonging to his ward, he should be denied compensation, there being no excusatory facts.

SAME—ACCOUNTING—CONVERSION—INTEREST.   Where a guardian used the funds of his ward for his personal use, keeping no account, he is liable for interest, regardless of the fact that he made no profit.

Appeal from a judgment of the superior court for King county, Smith, J., entered August 9, 1916, denying a discharge and final settlement of the account of a guardian, after a hearing before the court.   Affirmed.

*Walter B. Allen,* for appellant.
*Saunders & Nelson,* for respondents.

MAIN, J.—John Kalberg was appointed guardian of the estates of Henning Martin Anderson and Albin Elmer Anderson, minors, on September 27, 1909.   Henning Martin Anderson became of age on May 22, 1911.   On February 2, 1912, Kalberg filed an account showing $1,221.61 due his ward.   The ward admitted the correctness of the account. It was approved by the court, after allowing an attorney's

[1]Reported in 167 Pac. 71.

fee of $25, for the sum of $1,196.61. The amount due was
not paid over.

The younger ward became of age July 6, 1916. Kalberg
filed another account reciting the proceeding; that his ac-
count with Henning Martin Anderson had been approved;
that the amount due Albin Elmer was $1,196.61 less attor-
ney's fees to be allowed by the court and cost of a surety
bond; that he had in his previous account credited himself
with $213 interest on the whole estate, but had not since the
filing thereof credited himself with interest because he had
received no interest, and that he had been allowed no com-
pensation. He prayed that he be allowed costs, compensa-
tion and a certain sum advanced to Henning Martin An-
derson, aggregating the sum of $386.61, and that his ac-
count be approved.

The wards objected to the allowance of the account, claim-
ing that the gross amount due the joint estate was $2,289.50,
with interest at the legal rate from September 27, 1909;
that the estate had been misappropriated and converted to
the use of the guardian, and praying that the discharge of
the guardian be withheld until the full payment of the amount
theretofore found to be due Henning Martin Anderson.

The guardian answered, denying any conversion of the
fund and alleging that, after the time of the settlement of
his account, Henning Martin Anderson had loaned him per-
sonally the amount found to be due, and that any amount
that might be owing was owing from him as an individual;
that three years had elapsed from the time of the settlement
of the account and the loaning of the money, and that the
claim was barred under the statute of limitations.

The court found against the guardian upon all the issues,
finding that Henning Martin Anderson was entitled to re-
cover the net sum of $1,025.38, and that Albin Elmer An-
derson was entitled to recover the net sum of $1,390.85. No
compensation was allowed, and interest was charged from
the time of the appointment. Kalberg appeals.

We have reviewed the record and find that the charge of misappropriation and conversion of the fund is sustained. We have one question of mixed law and fact and one of law. First: Whether Henning Martin Anderson loaned the amount found to be due him on February 2, 1912, to his guardian, and if so, whether his claim is barred by the statute of limitations.

Kalberg testifies that he borrowed the money. Aside from Kalberg's own testimony, his whole case depends upon the testimony of one or more witnesses who testify that the boy told them that he had loaned his money to Kalberg. He admits that he so stated to these witnesses. We can admit the truth of all that Kalberg and his witnesses testify to and still find there was no loan.

Transactions between guardian and ward are scrutinized with great care.

"Knowing the powerful influence which a guardian has over his ward, especially when the whole estate of the ward is in the hands and control of the guardian, courts of equity have ever regarded with jealous watchfulness all transactions between guardian and ward, and where such position of influence is strengthened by the fact of intimate relationship existing between the parties, greater reason exists for the strict adherence to the rules above announced. Whenever a transaction between guardian and ward which is prejudicial to the interest of the latter is brought under the scrutiny of a court of equity, there is a strong presumption that the transaction resulted from the undue influence which the guardian is presumed to have over the ward, and the law casts the burden of proof upon the guardian to establish to the satisfaction of the court that the act proceeded from the independent and uninfluenced will of the ward." *Baum v. Hartmann*, 226 Ill. 160, 80 N. E. 711, 117 Am. St. 246.

See, also, *Williams v. Davison's Estate*, 133 Mich. 344, 94 N. W. 1048; *Harrison v. Harrison*, 21 N. M. 372, 155 Pac. 356, L. R. A. 1916E 854; *Daniel v. Tolon* (Okl.), 157 Pac. 756; 12 R. C. L. 61; Schouler, Domestic Relations, § 387.

This rule is applied without relaxation in the settlement of accounts. *Baum v. Hartmann, supra;* 21 Cyc. 169-F; Schouler, Domestic Relations, § 388. And even the fact that the ward has attained his majority at the time of settlement will not be sufficient to exempt the guardian from its operation. *Baum v. Hartmann, supra.*

"The rule is elementary that, even after the ward attains majority and the guardian's accounts have been settled, while the disability of infancy has been removed, that arising from the trust relation is but slightly diminished, and contracts between the guardian and ward are scrutinized with the utmost care and caution, and, if the guardian derives a benefit or the ward suffers a loss by the transaction, it will not be sustained if the court is convinced that there is lacking the element of the utmost fairness and good faith." *Williams v. Davison's Estate, supra.*

To make a loan there must be a fund presently available to the lender. To say that a guardian who had converted and dissipated a fund could conceal his malfeasance under the cloak of a loan, although it were so understood in terms, would be a travesty upon justice. The ward made no loan because there was nothing to loan. The guardian borrowed nothing because there was nothing to borrow. His account stands as an unpaid balance. While the courts have applied the statute of limitations to transactions between guardian and ward, they have not lost sight of the equities of the case where the controlling statute provides that an action shall be commenced within three years after the fraud is discovered. *Wickham v. Sprague,* 18 Wash. 466, 51 Pac. 1055. Certainly the ward should not be held to the discovery of the fraud practiced upon him at the very time his guardian was practicing an active deception and concealing his defalcation under the pretense of borrowing a nonexistent fund.

Second: Compensation is usually denied a defaulting guardian. The decree is amply justified in this case. *Huddleston v. Henderson,* 181 Ill. App. 176; Woerner, American Law of Guardianship, § 357. No excusatory facts are

plead or proved to relieve the malfeasance of the guardian, and it follows that the loss to his ward is not to be enhanced by a profit which ought to rest upon the legal ground of a service measurable in fidelity and loyalty to the trust.

The guardian complains because the court found that he had converted the share of Albin Elmer Anderson at a time prior to the time he filed an account showing the amount due Henning Martin Anderson, and was then and is now unable to pay the amount, and because of this delinquency has been charged interest. The testimony shows that no account of the estate was ever kept; that the money was placed to the personal credit of the guardian and used by him and by at least two firms in which he was a partner in the prosecution of personal and private enterprise. Kalberg failed in business and, at the time the elder ward became of age, was utterly without means of his own. He took the fund expecting to profit by its use. Surely the law will not allow compensation, nor permit him to say that he should not pay interest because he failed in his enterprises and for that reason received no profit. To do so would make the ward assume the hazards attending private enterprises. It would be to say generally that a debtor is excused from the payment of interest if his speculation fails.

"Should the guardian employ the fund in purposes of his own, seeking to make profit for himself (apart from any question of fraud that may arise) there is in such case no such labor performed, or skill exerted in behalf of the ward that needs to be compensated." *Burke v. Turner*, 85 N. C. 500.

The finding of the court rests upon the testimony of the guardian himself, and this court will not refine the law to the point of technicality to relieve him of a state of facts of his own making.

Judgment affirmed.

ELLIS, C. J., MORRIS, WEBSTER, and CHADWICK, JJ., concur.