[No. 15151. Department One. May 13, 1919.]

*In the Matter of the Estate of* DAVID STEELE JOHNSTON *et al.*[1]

EXECUTORS AND ADMINISTRATORS (104) — JUDGMENT (100, 109) — VACATION — ORDER APPROVING ACCOUNT — IRREGULARITIES. The fact that an order approving an administrator's final account and decree of distribution is appealable as a final order to correct error of law does not limit the force of Rem. Code, § 464, authorizing its vacation or modification for irregularities in obtaining it in reciting the approval of claims and payment thereof not then disclosed by the record.

EXECUTORS AND ADMINISTRATORS (42-45) — SALES — RESPONSIBILITY OF ADMINISTRATOR. The intent of Rem. Code, § 1545, providing that an administrator shall not be responsible for loss in selling property at less than its appraised value, if the sale has been justly made, is to make him responsible only when a sale has been unjustly made, and not when irregularly made.

SAME (42-45). A sale by an administrator of lots, subject to mortgage that was being foreclosed, is not unjustly made, within Rem. Code, § 1545, although the sales were irregular and for much less than the appraised value, when, considering the incumbrance and the state of the market, it was probably the only course that would have enabled the estate to realize anything out of the property; and he therefore is not responsible for the loss in selling at less than the appraised value.

SAME (56, 57, 157) — SETTLEMENT — APPRAISED VALUE. An administrator should not be charged with the appraised value ($100,000) of corporate stock having no market value, the corporation being in difficulty and shortly a bankrupt, where it was held with consent of the heirs in the hope that it might become valuable, and where the administrator, by pledging the stock to the corporation, realized $7,500 in cash and obtained a discharge of the corporation's claim against the estate amounting to $14,000 additional; notwithstanding irregularities in his proceedings.

SAME (83, 159-1) — CLAIMS — FAILURE TO PRESENT — LIABILITY TO DISTRIBUTEES. An administrator will not be held in his final accounting for the amount of two claims against the estate which were not presented within the year limited to creditors, and other claims not indorsed as approved, where such claims were held back to assist the estate through financial difficulties until claimants were advised

[1]Reported in 181 Pac. 209.

that the administrator was prepared to pay, and where the payment was twice approved by the court, and under the circumstances the petitioners should not be permitted to profit by the irregularity.

SAME (157)—SETTLEMENT—APPRAISEMENT. An administrator *de bonis non* is not responsible on his final accounting for the amount of an unexplained penciled memorandum "money $631.49" in the inventory, which was a duplicate of the inventory theretofore filed, the only fair inference from the record being that it was money realized from the other property inventoried.

SAME (160)—COUNSEL FEES. The allowance of $1,025 for fees of an attorney for an executrix of an estate, appraised at $144,000, is excessive and should be reduced to $500, where $115,000 of the appraised property proved to be of little or no value.

SAME (165)—COMPENSATION—RATES AND COMPUTATION. The appraised value of the estate is only the prima facie value for figuring an administrator's statutory commissions, which should be based upon the total cash received from all sources, plus the value of real estate conveyed in satisfaction of debts, and plus the appraised value of household goods administered; and where that amounts to the sum of $39,831.24, the statutory commission is $1,633.24.

SAME (160-1)—COMPENSATION—RIGHT TO. An administrator is not to be deprived of his statutory compensation by reason of irregularities, where he was not guilty of fraud and administered the estate with great ability and resourcefulness in the face of financial difficulties.

SAME (165)—COMPENSATION—RATE AND COMPUTATION. Where an administrator *de bonis non* completes the administration commenced by a deceased executrix and also administers her estate, the statutory fees or commissions on final accounting should be pro rated between the two estates, and he should not receive commissions on the value of household goods that did not come into his possession, nor upon the interest of the deceased executrix in corporate stock that was never freed from the debts of the estate or distributed.

COSTS (80)—ON APPEAL—IMPROPER ABSTRACT. The appellant will not be allowed costs for an abstract on appeal which was argumentative and partisan and no aid to the court.

EXECUTORS AND ADMINISTRATORS—SETTLEMENT—INTEREST. Interest is properly allowable upon the balance due in the hands of the administrator at the legal rate, and payments to a legatee must be credited as of the time made.

Appeal from an order of the superior court for Pierce county, Chapman, J., entered September 28,

1918, approving the final account of an administrator and the decree of distribution, after a hearing before the court.   Reversed.

*L. B. La Ponte* and *Ellis, Fletcher & Evans,* for appellants, contended, among other things, that the decree of July 1, distributing the estate and approving the final account having been set aside, cannot now be invoked in bar of the petition for an accounting.   Rem. Code, §§ 161, 235, 464; *Hayes v. Peavey,* 54 Wash. 78, 102 Pac. 889; *Anderson v. Burgoyne,* 60 Wash. 511, 111 Pac. 777; *Litzell v. Hart,* 96 Wash. 471, 165 Pac. 393.

So far as the minors are concerned, they could re-open the case any time with one year after majority. Rem. Code, § 464, subd. 8; *Ball v. Clothier,* 34 Wash. 299, 75 Pac. 1099; *In re Nelson's Estate,* 26 S. D. 615, 129 N. W. 113.

The order of May 10 was void because taken in an *ex parte* proceeding.   *Colkett v. Hammond,* 101 Wash. 416, 172 Pac. 548.

The so-called final decree distributing the estate subject to liens and claims was void for want of jurisdiction.   Rem. Code, §§ 1576, 1577, 1608; *Huston v. Becker,* 15 Wash. 586, 47 Pac. 10; *Candelaria v. Miera,* 18 N. M. 107, 134 Pac. 829.

The order of May 10 and decree of July 1 were voidable for fraud practiced by Mr. Harvey on petitioners and on the court.   *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647; *Sohler v. Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. 98; *Aldrich v. Barton,* 138 Cal. 220, 71 Pac. 169, 94 Am. St. 43; *Silva v. Santos,* 138 Cal. 536, 71 Pac. 703; *Pollock v. Cox,* 108 Ga. 430, 34 S. E. 213.

As to the minors, the decree was void because the administrator could not act for them as guardian, the positions being hostile.   22 Cyc. 622; *Ponti v. Hoffman,*

87 Wash. 137, 151 Pac. 294; *Whitaker v. Ellis,* 102 Wash. 43, 172 Pac. 881; *Prince v. Mottman,* 84 Wash. 287, 146 Pac. 841; *In re Sholes' Estate,* 170 Iowa 43, 152 N. W. 3.

The sales of the lots under contract, without an order of court, were void. Rem. Code, § 1498; *Wallace v. Grant,* 27 Wash. 130, 67 Pac. 578; *In re McDonald's Estate,* 29 Wash. 422, 69 Pac. 1111; *English-McCaffery Logging Co. v. Clowe,* 29 Wash. 721, 70 Pac. 138.

Compliance with the statute of non-claim was essential. *Ash v. Clark,* 32 Wash. 390, 73 Pac. 351; *Ward v. Magaha,* 71 Wash. 679, 129 Pac. 395; *Foley v. McDonnell,* 48 Wash. 272, 93 Pac. 321; *Butterworth v. Bredemeyer,* 89 Wash. 677, 155 Pac. 152; *In re Richardson's Estate,* 96 Wash. 123, 165 Pac. 656; *Osborn v. Forsythe,* 54 Okl. 40, 153 Pac. 207; *Huebner v. Sesseman,* 38 Neb. 78, 56 N. W. 697; *Miner v. Raymond,* 113 Mich. 28, 71 N. W. 501; *Nally v. McDonald,* 66 Cal. 530, 6 Pac. 390; *Kornegay v. Mayer,* 135 Ala. 141, 33 South. 36; *Municipal Court of Providence v. Wilbour,* 23 R. I. 95, 49 Atl. 488; *Farwell v. Richardson,* 10 N. D. 34, 84 N. W. 558.

The administrator, because of his fraud, misconduct and unlawful proceedings, has forfeited his right to fees and commissions. 18 Cyc. 1262, 1263; *In re Anderson,* 97 Wash. 688, 167 Pac. 71; *Wittemore v. Coleman,* 239 Ill. 450, 88 N. E. 228; *McIntire v. Mower,* 204 Mass. 233, 90 N. E. 567; *In re Hermann's Estate,* 226 Pa. 543, 75 Atl. 731; *Hall v. Santangelo,* 178 Ala. 447, 60 South. 168; *State ex rel. Bauman Jewelry Co. v. Taylor,* 112 Mo. App. 585, 87 S. W. 7; *Fluck v. Lake,* 54 N. J. Eq. 638, 35 Atl. 643.

The administrator is not entitled to fees and commissions prior to final settlement. *In re Hagerty's Estate,* 97 Wash. 491, 166 Pac. 1139.

In no event is the administrator entitled to commissions on the furniture because it was a specific legacy. 18 Cyc. 1147.

*Hayden, Langhorne & Metzger* and *Bates & Peterson* for respondent, among other things, to the point that the administrator had power to pledge the stock to pay the debts, and that the order entered was an appealable one, and that this present proceeding is a collateral attack thereon, cited: 11 R. C. L. 412; Schouler, Executors, §§ 349, 350; *Carter v. Manufacturers' Nat. Bank,* 71 Me. 448, 36 Am. Rep. 338; *Schell v. Deperven,* 198 Pa. 591, 48 Atl. 815; *Crocker v. Old Colony R. Co.,* 137 Mass. 417; *Goodwin v. American Nat. Bank,* 48 Conn. 550; *Moore v. American Loan & Trust Co.,* 15 N. Y. Supp. 382; *Pickens v. Yarborough's Adm'r,* 26 Ala. 417, 62 Am. Dec. 728; *Hemmy v. Hawkins,* 102 Wis. 56, 78 N. W. 177, 72 Am. St. 863; *Smith v. Ayer,* 101 U. S. 320; *Gottberg v. United States Nat. Bank,* 13 N. Y. Supp. 841; *Gottberg v. United States Bank,* 131 N. Y. 595, 30 N. E. 41.

There was no allegation or proof of fraud preventing petitioners from appearing and protecting their rights on the final hearing. *Meeker v. Waddle,* 83 Wash. 628, 145 Pac. 967; *Davis v. Seavy,* 95 Wash. 57, 163 Pac. 35, Ann. Cas. 1918D 314; *Burke v. Bladine,* 99 Wash. 383, 169 Pac. 811.

The powers of the executor under a nonintervention will pass to the administrator c. t. a. regardless of whether or not the power of sale provided for by the will is discretionary or imperative. 11 R. C. L. 422; *Davis v. Hoover,* 112 Ind. 423, 14 N. E. 468; *De Haven v. De Haven's Adm'r,* 104 Ky. 41, 46 S. W. 215, 47 S. W. 597; *May v. Brewster,* 187 Mass. 524, 73 N. E. 546; *Campbell v. Jennings,* 22 Misc. Rep. 406, 50 N. Y. Supp. 278; *Wilson v. Snow,* 228 U. S. 217, 50 L. R. A. (N. S.)

604; *Carpenter v. Bonner,* 50 N. Y. Supp. 298; *Scott
v. Douglas,* 39 Misc. Rep. 555, 80 N. Y. Supp. 354.

Minors when represented by guardian *ad litem* are
bound in the same manner and to the same degree as
adults. 18 Cyc. 1190; Herman Estoppel, p. 178, § 164;
1 Daniel, Chancery Proceedings (5th Am. Ed.), 163,
164; *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32
L. R. A. 671; *Burke v. Northern Pac. R. Co.,* 86 Wash.
37, 149 Pac. 335, Ann Cas. 1917B 919; *Clough v. Monro,*
86 Wash. 507, 150 Pac. 1190; *English v. Savage,* 5 Ore.
518; *Thompson v. Maxwell Land Grant & R. Co.,* 168
U. S. 415.

TOLMAN, J.—This is a proceeding brought by the
heirs and legatees of David Steele Johnston, to set
aside the order approving the final account of the ad-
ministrator with the will annexed and the decree of
distribution, and to obtain an accounting from such
administrator. Also a like proceeding on behalf of
the legatee of Marie Helen Johnston, based largely
upon the same facts. It appears from the petition in
the D. S. Johnston estate that the decedent died in
Pierce county, Washington, on August 11, 1913, leav-
ing a nonintervention will, by the terms of which he
bequeathed to the petitioners James Ronald Simon
and George Howard Simon, minor grandsons, the sum
of $5,000 each. The household effects, jewelry, and
silverware, were left to the widow, and the remainder
of the estate was devised in certain allotted shares to
the widow and certain children and grandchildren of
the testator. The widow was named as executrix,
without bond. The will was admitted to probate in
Pierce county. The widow, Marie Helen Johnston,
was confirmed as executrix, and entered upon her
duties as such. On September 6, 1913, an inventory
and appraisement were filed, showing the total value

of the estate to be $144,900, but no order of solvency was ever obtained. An order to publish notice to creditors was made, and without any other proceedings appearing of record in the estate, the executrix died on February 24, 1914, leaving a will by the terms of which she bequeathed her interest in the estate to Howard A. Johnston. Thereafter, with the consent of all interested, the respondent Walter M. Harvey, a practicing attorney of Pierce county, who had theretofore been the attorney and close personal friend of the deceased in his lifetime, and who was the attorney for the executrix up to the time of her death, was appointed administrator with the will annexed of both estates, and duly qualified as such. Respondent proceeded, by petition and order of court based thereon, to convey certain real estate belonging to the D. S. Johnston estate, appraised at $24,000, to the National Bank of Tacoma, in consideration of the assumption by the bank of $12,000 of mortgage indebtedness secured thereon, and the release and satisfaction of $10,200 of indebtedness due to it from that estate. This is the only act of the administrator not attacked or questioned by the petitioners.

The main contentions grow out of the manner in which the administrator handled some 347 vacant and unimproved lots lying in Woodlawn addition to Tacoma, appraised at $15,000; and 1,200 shares of the capital stock of Eilers Music House, a corporation, appraised at $100,000. We have with infinite care accomplished the herculean task of carefully reading and considering the 387 pages of printed briefs and the 177 pages of the abstract of the record; and the abstract proving to be argumentative and partisan, we have also been obliged to give the same painstaking study to the 151 pages of the record, the 306 pages of the statement of facts, and the voluminous files in both

probate proceedings, as would have been required had no abstract been furnished. The points raised are so many, and the irregularities complained of are so numerous, that it is manifestly impossible to discuss or even mention each of them without unduly extending this opinion; but whether mentioned or not, each has been given a careful study. The further facts will sufficiently appear as we proceed.

The trial court, after a full hearing upon the petitions, so far sustained them as to direct that the final report and account of the administrator and the decree of distribution in both estates be vacated, and the administrator was directed to file a new report and full accounting within twenty days. With this order the administrator complied and filed new final accounts not differing materially from the accounts which had been previously attacked and set aside. To these accounts or reports, petitioners filed objections and exceptions, raising the same issues as were previously raised by the petitions; and the matter coming on to be heard upon the exceptions in a different department and before another judge, upon the testimony previously taken, the trial court, after consideration, made an order to the effect that it was improper for him to review the rulings of an associate judge still sitting, or to express his views upon a matter already passed upon in another department of the same court, and directed that the exceptions be overruled and that the last report of the administrator in each case be approved as his former reports were approved in the other department, from which order in each case this appeal is prosecuted.

The motion to dismiss the appeal is not well taken and will be denied without a discussion of the reasons therefor.

It is contended by respondent that the order approving the final account and decree of distribution was a final order and, therefore, appealable, and that petitioners should have appealed therefrom instead of attacking it by petition to vacate in the court where made. It may be conceded that such is the rule where it is sought to correct an error of law made by the trial court. *Sound Inv. Co. v. Fairhaven Land Co.*, 45 Wash. 262, 88 Pac. 198, and cases there cited. But these authorities in nowise limit the force of our statute, Rem. Code, § 464, with reference to the vacation and modification of judgments. Appellants in filing their petition were apparently proceeding under subdivisions 3 and 4 of that statute, and perhaps also under subdivision 8, and they certainly charge every conceivable form of irregularity and make many harsh charges of fraud. Without going into detail, we find that the charges of irregularity were amply sustained, and that the court had, in the order and decree under attack, approved the payment of claims against the estate which were not presented within one year, had never been indorsed with the approval of the administrator or the judge, and could not then be found in the court files; as well as many other irregularities. In fact, it may be said that irregularity was the rule and regularity the exception, as is abundantly shown by the record now before us, though we think the charges of fraud, which were repeated and renewed in this court, are wholly unsustained and unproven. These irregularities, which unfortunately abound, bring the case within the purview of the statute, and place it without the rule laid down in *Sound Inv. Co. v. Fairhaven Land Co., supra*. It was said in *In re Doane's Estate*, 64 Wash. 303, 116 Pac. 847:

"We are not holding in this case that the superior court has no jurisdiction to set aside a decree settling a final account upon a proper showing."

Nor has the plain language of the statute been anywhere limited by construction, so far as we are now advised. Since we have found that there was no fraud proven, but that the irregularities, which cannot be denied, are sufficient under the statute to justify the vacation of the order and decree, we need not consider those cases in which it was sought to set aside a decree on the ground of fraud, after the expiration of the time fixed by the statute, either by direct or collateral attack. If, then, the trial court was justified in setting aside the order and decree because of irregularities in obtaining it, arising from the failure to comply with the statutes then in force governing the presentation, allowance, and filing of claims against the estate, whereby the decree was caused to recite the approval of, and the approval of the payment of, claims which the record failed to disclose and which could not then be legally enforced, we must now inquire whether, after the filing of a new account and the taking of evidence touching all of the charges made by the petitioners, and the objections and exceptions to the final account, in which proceeding all parties in interest were represented, the final account should have been approved.

We cannot discuss, or even state, many of appellant's contentions; but those not stated or discussed have been fully considered and found to be without merit. Confining this opinion to the principal contentions, we will very briefly refer to the following:

I. The lots in Woodlawn addition were appraised at $15,000, the greater part being covered by a mortgage for $3,800, upon which there was considerable accrued interest, and all being subject to taxes and

assessments amounting to approximately $2,000. Shortly after respondent qualified, proceedings to foreclose the mortgage were commenced. Respondent appeared in the foreclosure action, and as a matter of favor, and by dilatory tactics, considerably delayed the foreclosure. In the meantime he tried diligently to find a purchaser for this property, in whole or in part, without success, and finally, without authority from the heirs or from the court, he employed an agent to sell the lots at retail on contract, mostly with a small payment down, and the balance in monthly install- ments, agreeing to convey good title by deed when the purchase price was fully paid, the agent to receive 25 per cent of the sale price of each lot as his commission. About 140 lots were sold by this method, and written contracts were entered into with the purchasers. Re- spondent received from the agent, after the commis- sions had been deducted, $1,474.75, and in addition, there was paid to him direct by the purchasers $475. Not having realized enough money to pay off the mort- gage and the tax liens, so as to clear the title and en- able him to perform his contracts with the purchasers, and fearing that he would lose the property entirely through the expiration of the time for redemption, he, in connection with the loan which he was obtaining from the same source, which will be referred to later, conveyed all of the Woodlawn property by means of a deed in blank, executed by the adult heirs some time before in anticipation of a possible sale of the lots in bulk, which sale did not materialize, to a representative of the Eilers Music House, upon condition that re- spondent should furnish $2,000, out of the loan which he was then negotiating, toward the payment of the encumbrances on the lots, and the Eilers Music House should pay off the remainder of such encumbrances, so that the property would be freed from liens and that

part which had been sold on contract could be conveyed to the several purchasers. After this arrangement was completed, respondent sold the contracts which he then held for the lots previously sold, upon which there was still unpaid some $3,400 or $3,500, to the Eilers Music House for $2,850; but later took back a contract for $1,000, returning that much of the consideration, so that Eilers Music House actually paid him $1,850 for such of the contracts as they finally received. All of this was carried through without advising the heirs, and without any authority from the court, though after it was all completed, and on or about May 10, 1916, shortly before attempting to finally close the estate, these facts, with the exception of the sale and assignment of the contracts, were reported to the court by respondent, and on *ex parte* hearing without notice, an order approving the acts reported was made by the court. No books of account were kept by respondent covering this or any other of his financial transactions; and even the money received was sometimes deposited to his individual credit in the bank, instead of being all carried in a trust account; a course of conduct which must be condemned severely, whether or not loss follows. And yet counsel for appellants have not, by a long and skillful cross-examination, or by any other evidence, been able to present anything which raises even a doubt that all the money thus received by respondent has not been fully accounted for. Petitioners, while contending that these sales are void, are not here seeking to recover the lots sold, as indeed they could not in any action to which the purchasers are not parties. But their object is to hold the administrator for the appraised value of the Woodlawn lots, under §§ 1544 and 1545, Rem. Code, then in effect. The latter section provides:

". . . if any has been sold for less than the appraisement, he shall not be responsible for the loss if the sale has been unjustly (justly) made."

From which it is argued that, if the sale has been unjustly made, the administrator will be held to be liable. It will be observed that the intent of the statute is to create liability only when a sale has been unjustly made, and not when irregularly made. It must be conceded that these sales were irregularly made; but our careful study of the facts convinces us that, in view of the location and character of the property, the encumbrances thereon, and the condition of the market during the period in question, not only is there no evidence that the sales were unjustly made, but, on the contrary, the course followed by the administrator was probably the only course which would have enabled the estate to realize anything out of this property, and, therefore, there is no liability under the statute referred to. Still less is there a double liability under Rem. Code, § 1532.

II. The 1,200 shares of the capital stock of Eilers Music House, appraised at $100,000, were never sold, and shortly after the appraisement was made, the Eilers Music House became, if it was not already, involved in financial difficulties, and a committee of its creditors took charge of its affairs and remained in control for some time. True this committee was discharged before the estate was closed, but the corporation shortly thereafter went into bankruptcy, and at no time since the death of Mr. Johnston has it paid any dividends, nor has the stock had a market value. If it were ever saleable at all, which is extremely doubtful, it could have been sold only to some one already identified with the business, and presumably at a price not greater than its real value, and it is not reasonable to suppose that any person connected with the business

and familiar with the affairs of the corporation would at any time have paid any substantial sum for the stock. The administrator, the heirs, and those connected with the Eilers Music House, seemed to have hoped that the corporation would work out of its difficulties, and that its stock would sometime in the future become valuable. The stock was held by, and with the consent of, the heirs, in the hope that eventually something substantial might be realized therefrom. Without fully advising the heirs as to the conditions, and without previous authority from the court, the administrator pledged this stock to the Eilers Music House to secure a loan to the estate of $7,500 then obtained in cash, in connection with the transfer of the Woodlawn lots hereinbefore referred to, and also pledged the stock at the same time to secure payment of the claim of Eilers Music House against the estate, which had existed prior to Mr. Johnston's death, then amounting to upwards of $14,000. Since by this proceeding the estate actually realized $7,500 in cash from an asset which never was saleable, and has since become worthless, and the remainder of the estate has been freed from the previously existing indebtedness due the Eilers Music House, notwithstanding the irregularities complained of, we can see no justice in the demand that the administrator be charged with the appraised value of this stock.

III. The claims against the estate which were paid by the administrator amounting to $2,934.50, some of which were presented after the expiration of the statutory time, some of which bore no indorsement of approval of either the administrator or the judge, were no doubt irregularly paid. If the question were presented here by the holder, attempting to enforce payment upon a claim lacking something which the statute required him to do, we should be obliged to hold

that the law would give him no relief. *Butterworth v. Bredemeyer,* 89 Wash. 677, 155 Pac. 152; *In re Parkes' Estate,* 105 Wash. 586, 178 Pac. 830. These claims which were not presented within the year were a claim of one of the petitioners herein, who was a son of the deceased, and the McKenna claim, both of which were apparently held back out of a desire to assist the estate through its financial difficulties and until the claimants were advised that the administrator was prepared to pay. All of the other claims were duly presented, and each creditor did all that the statute then required him to do; the failure to approve, have the court approve, and file, was that of the administrator, who relies upon his approval shown in his final report, and the approval of the court in the order approving his final report. And under the peculiar conditions existing here, the petitioners should not be permitted to profit by the irregularity. These claims have all been paid, and the payment has been twice approved by the court below; and, except in one instance there is no contention but what they were just claims and the creditors were morally entitled to their money. Shall we then take from the creditors that which was rightfully theirs, though irregularly received, and give it to one who has no right thereto? Or shall we compel an administrator who has irregularly paid a just debt, because only of such irregularity, to again pay the money, not to the creditor, but to one who has no right thereto, either legally or morally? We think there is no warrant in law or equity for such a course. The one and only claim which is disputed is that of respondent for services rendered deceased in his lifetime, amounting to $450. This claim was presented within the year, was approved by the court, was on file, and is supported by respondent's testimony, drawn out by petitioners' own examination. There is

no evidence in the record disputing its justness or validity.

IV. The penciled memorandum in the inventory of "money $631.49," is not shown to have been money coming into the hands of the administrator. Respondent was appointed on April 4, 1914, and his inventory, which is a duplicate of the inventory theretofore filed by his predecessor, is dated January 3, 1915. The record contains no explanation of this item, respondent seemed wholly unable to explain it, and the only plausible explanation which occurs to us, supposing the memorandum to have been made by respondent in his own handwriting, is that, during the time which elapsed between the making of the first inventory and the making of the second inventory, this amount of money had been realized from some of the other items shown on the inventories. Petitioners do not attempt to show that any such amount of money was due the estate from any source, or ever came into respondent's hands, and we think the only fair inference is that, if it be a memorandum of money received, it was money realized from the other property inventoried.

V. The court in approving the final account allowed respondent $1,025 as attorney's fees, earned as attorney for Marie Helen Johnston during the time she acted as executrix; and it is stipulated that three well known and reputable members of the Pierce county bar would testify that the services were worth that sum. The allowance was made, and this testimony would have been given, upon the theory that the estate had assets of upwards of $144,000; while, as we have seen, by reason of there having been but little, if any, real value in the Woodlawn lots, and in the Eilers Music House stock, the actual value of the estate was hardly more than one-fourth that amount. The value of the estate being always an item to be taken into considera-

tion in fixing fees, we think the allowance here made was too much; and, in view of what the value of the estate has proved to be, as well as considering what the services were and the time over which they extended, as shown by the record, we think $500 an ample allowance for such fees.

VI. The court allowed the statutory administrator's fees, based upon the appraised value of the estate. While the appraised value may be the *prima facie* value, if nothing to the contrary is shown, here we have ample evidence of the real value, and the fees should have been based thereon. It is contended, however, that, under the authority of *In re Anderson*, 97 Wash. 688, 167 Pac. 71, no fees whatever should be allowed. We hold, however, from the whole record, that no fraud or misappropriation whatever has been shown. The respondent here had to, and did, show great resourcefulness and ability in handling and conserving the estate. His fault lay in not keeping proper records and accounts, in not procuring authority before he acted, in unintentionally, we think, misleading the heirs in his correspondence and reports, which was due primarily to his failure to keep accounts and refer to them for the facts in writing to the heirs, and in claiming excessive compensation. Our study of the record convinces us that a final account should be approved and an allowance of fees made as follows:

Money received from the sale of lots in
  Woodlawn addition through the sales agent $1,474.75
Money received on such contracts, paid direct to the administrator...............      475.00
Received from Eilers Music House from sale
  of uncollected contracts................    1,850.00
Received from Dr. Balabanoff.............      900.00

| | |
|---|---:|
| Total realized from Woodlawn lots | $4,699.75 |
| Less amount paid by the administrator toward removing encumbrances | 2,000.00 |
| Amount actually received from sale of lots in Woodlawn addition | $2,699.75 |
| To this should be added the loan from Eilers Music House, secured by stock as collateral | 7,500.00 |
| Deposited in National Bank of Tacoma | 131.49 |
| Collected from Eilers Music House debt due deceased | $2,000.00 |
| Received from Howard A. Johnston as advances | 400.50 |
| Total cash received from all sources | $12,731.74 |

Disbursements on account of lots in Woodlawn addition:

| | |
|---|---:|
| Payment of taxes, commission, and attorney's fees | $152.43 |
| Expenses of administration, taxes, inheritance tax, guardian ad litem fees, and attorney's fees as reduced | 3,117.69 |
| Payment of claims against estate | 2,934.50 |
| Total disbursements | $6,204.61 |
| Net cash on hand | 6,527.13 |

For the purpose of fixing the administrator's fees, the following items should be considered:

| | |
|---|---:|
| Total cash received by administrator from all sources, as before set forth, less advances by Howard A. Johnston, which were not a part of the estate | $12,331.24 |
| Value of real estate conveyed to National Bank of Tacoma in satisfaction of debts | 24,000.00 |
| Appraised value of household goods | 3,500.00 |
| Total value of estate | $39,831.24 |
| Statutory fees on this amount | 1,633.24 |

This fee should be divided between respondent and
the estate of Marie Helen Johnston, in the same pro-
portion as the fee heretofore allowed was divided.
Upon respondent's final report, as originally pre-
sented, and apparently at his request, and certainly
with his consent, of the fee then claimed, approxi-
mately 17½ per cent was found to have been earned
by the executrix prior to her death; and applying the
same percentage here, $286 out of the $1,633.24 allowed
as fees should be paid to the estate of Marie Helen
Johnston and there accounted for. Deducting the
$1,633.24 allowed as fees to the executrix and adminis-
trator with the will annexed, from the cash on hand
of $6,527.13, leaves in the hands of the administrator,
to be distributed under the terms of the will, $4,893.89.

With reference to the estate of Marie Helen Johns-
ton, deceased, the respondent, as administrator with
the will annexed, inventoried as assets of that estate
$1,025 as commissions allowed the deceased as execu-
trix of the estate of D. S. Johnston, which amount we
have seen must be reduced to $286. The administra-
tor also included in the inventory, and claimed com-
missions upon, the household furniture, etc., belonging
to the estate of D. S. Johnston, which, as we have seen,
was administered in that estate. Fees have been al-
lowed thereon, and it must be held that such household
property did not pass into the respondent's possession
as administrator of the Marie Helen Johnston estate,
and he is not entitled to compute administrator's fees
again upon the value of that property. Respondent
also inventoried and was allowed fees upon 200 shares
of the capital stock of Eilers Music House, being the
one-sixth interest in the 1,200 shares belonging to the
estate of D. S. Johnston, deceased, which might have
come to Marie Helen Johnston, had the same ever been

freed from the debts of the D. S. Johnston estate and distributed. This one-sixth interest, or 200 shares, was given an appraised value of $11,866. Manifestly the estate of Marie Helen Johnston never received any part of these shares, and the irregularity in reporting these items and claiming administrator's fees thereon, which approaches the nearest to bad faith of anything we have found in the record, was sufficient to justify the order setting aside the final account. The record convinces us that respondent's final report to the following effect may be approved, and fees allowed him as herein stated:

Cash collected on Detroit mortgage...........$528.66
Fees as executrix of the estate of D. S. Johnston, deceased .......................... 286.00

Total cash received and total value of estate...$814.66
From which should be deducted the following disbursements:
Premium on bond........................... $66.67
Clerk's fees ............................... 10.75
Publication of notice to creditors............. 5.00
Filing final account and publication of show cause order ............................. 10.00
Statutory administrator's fees............... 57.02

Total disbursements ......................$149.44
Leaving on hand and subject to distribution under the terms of the will................... 665.22

The judgment appealed from is reversed, with directions to proceed in harmony with the views herein expressed. Appellant will not be permitted to recover costs of the abstract.

CHADWICK, C. J., MITCHELL, MACKINTOSH, and MAIN, JJ., concur.

ON PETITION FOR MODIFICATION.

[Decided August 5, 1919.]

PER CURIAM.—The decision in this case is silent on the matter of interest; and also fails to make mention of a payment of $500 made by the administrator with the will annexed of the estate of Marie Helen Johnston to Howard A. Johnston, the legatee. Interest is properly allowable upon the balance in the hands of the administrator on July 1, 1916, at the legal rate, and, of course, the payment to the legatee, which is not disputed, must be credited as of the time it was made. This expression of the views of this court may be read in connection with the original opinion, so that there may be no uncertainty as to its meaning upon these points.